TAFF v. HOSMER.

---

## Samuel S. Taff v. John Hosmer and another.

*Appeal from probate of will. General issue.* The plea of the general issue in the Circuit Court, on appeal from the probate of a will in the Probate Court, puts in issue the sanity of the testator, which is necessarily averred by the proponent of the will, and no special plea is necessary for that purpose.—*Beaubien v. Cicott,* 8 *Mich.* 9.

*Who has the affirmative of the issue?* The proponent of the will has the affirmative, and must first make out his *prima facie* case, both as to the fact of the execution of the will and the competency of the testator. A defendant may be entitled to open the case when the pleadings are such as, in the absence of proof, would

TAFF v. HOSMER.

establish the right claimed against him; but he can neither be required, nor is he entitled to open it for the purpose of disproving allegations, not yet in any manner supported, but which the plaintiff must prove in order to entitle him to a verdict.

*Order of testimony. What proponent may prove in rebutting.* The proponents proved by the subscribing witnesses, the execution of the will, and that the testator was of sound mind. The contestant then put in evidence tending to show a want of testamentary capacity, and rested his case. The proponents were then allowed, against objection, to go fully into the question of sanity, not by way of reply merely, but to put in affirmative evidence as fully as if the ground had not been covered by their evidence at the outset. *Held*, that this course was properly allowed, and that the proponents were at liberty to rest upon a *prima facie* case, until evidence was adduced tending to show unsoundness of mind in the testator, and, that then they could go fully into the proofs of soundness.

*Proponent, when may open and close the argument.* The right to open and close the argument belongs to the party who has the right to open the proofs, and that belongs to the proponent whenever there is any portion of his case which he is required to support by evidence. The proponent's right in this case was therefore unquestionable.

*Charge of the Court. Error in fact not presumed.* The Court below in charging the jury stated that "the only issue now presented and in dispute is, whether the will in question is the will of C. W. J.; that is, whether at the time it was executed he had a sound and disposing mind and memory." Objection was made to this and all other parts of the charge, without the attention of the Court being specially called to the error of fact, if it was an error.

*Held*, that this expression of the judge related to the issue made by the evidence on the trial, and not that made in law by the pleadings; and that nothing appearing in the record to show that it was not true in fact, it will be presumed to be correct.

If, in fact, anything besides competency was disputed, and contestants thought this statement likely to lead the jury to overlook their objections on other points, it was their duty, instead of taking this general exception, to call the judge's attention to any other branch of the case in dispute, that he might have an opportunity to correct the error.

*Heard April* 17th. *Decided May* 5th.

Error to Wayne Circuit.

This was an appeal from the decree of the Probate Court of Wayne County, admitting to probate the last will and testament of Cyrus W. Jackson, deceased. In accordance with an order of the Circuit Court, the proponents filed a declaration, in which they averred the execution of the will, and that the testator was of sound mind.

To this declaration the contestant pleaded the statutory general issue, and also special pleas, denying the soundness of mind of the testator.

Under the charge of the Court the jury rendered a verdict

sustaining the validity of the will; and the contestant brought the case by writ of error to this Court.

The facts appearing on the trial, and the charge of the Circuit judge, appear in the opinion of the Court.

The errors assigned and insisted upon in this Court on the argument, were as follows:

1. Said Circuit Court erred in refusing to allow the contestant to open the case to the jury, and to open the case in putting in testimony on the question of the mental soundness of the testator.

2. Said Circuit Court erred in allowing the will to be read in evidence before the proponents had given in their whole evidence as to the soundness of mind of the testator.

3. Said Circuit Court erred in allowing the proponents, after the contestants' had rested their case, to introduce a great quantity of affirmative evidence in regard to the soundness of mind of the testator.

4. Said Circuit Court erred in refusing to the contestants the right or privilege of opening and closing the argument of the case to the jury, after the entire testimony was introduced, on the question of soundness of mind of the testator.

5. The Circuit Court erred in making the four charges, and each of them, as requested by the counsel for the proponents, and in refusing to change the same, as requested by the counsel for the contestants.

*Levi Bishop*, for plaintiff in error.

1. Upon the issue formed by order of the Circuit Court, the contestants had the right to open the case to the jury before the introduction of the evidence. A "painful conflict of judicial decisions" on this question is noticed in the case of *Beaubien v. Cicotte*, 8 *Mich.* 13. In the present case the proponents averred the soundness of mind of the testator, as this was required to be done in the pleadings, by the opinion of the Court in the case above cited. This rule is thus laid down with reference to the pleadings solely. We insist that when

we come to the proofs, the presumption of law, that the testator is of sound mind, prevails; and that the party who contests that fact, being compelled to prove unsoundness affirmatively, has the right to open the case.—*Redfield on Wills*, 44, *note* 30.

On an appeal from the Probate Court, the presumption is in favor of sanity, and it is for those who aver the contrary to prove it.—7 *Gray*, 71; *Redf. on Wills*, 45, § 28; *Id.* 46, 47, 48.

2. We also insist that, having the affirmative of the issue on the question of sanity, we had a right to the opening in the introduction of testimony.—See *case cited ; Redf.* 46–49.

3. The proponents did in fact introduce, in their opening, evidence of the soundness of mind of the testator; and we claim that, having done this, they were bound to introduce their whole evidence on that point, before they rested.—8 *Mich.* 9; *Redf.* 30–50.

4. The first point charged by the Court was erroneous. Most clearly, the due and legal execution of the alleged will was a question in issue, especially raised by the pleadings, and was to be passed upon and found, one way or the other, by the jury. The Court in his charge took that question away from the jury. No matter how clearly the will may have been proved, it was for the jury to pass on, and the court ought to have left the question to them. To take, it away from them, or to charge that it was not in issue, or to charge that another issue was the only one in the case, was erroneous.

*D. Bethune Duffield, G. V. N. Lothrop*, and *C. I. Walker*, for defendants in error.

1. There is no error in the rulings of the court as to the right of the appellants to go forward, or the right of the appellees to put in further proof as to sanity, after the appellant's evidence was in. At all events this is a matter of discretion on the part of the Circuit Judge, with which this Court will not interfere.

"The mode of conducting trials, the order of introducing

evidence, and the times when it shall be introduced, are matters properly belonging to the practice of the Circuit Courts, with which this Court ought not to interfere."—14 *Pet.* 448; 1 *Black.* 227.

This Court have decided that the propounder of the will must aver the sanity of the testator. Whether that sanity must be proved, or will be presumed, is a question on which authorities differ.—8 *Mich.* 9; 10 *Am. L. Reg.* 547.

This question has been very fully examined in *Redf. on Wills,* p. 30–50. The practice seems in accordance with the course pursued in this case.—7 *Pick.* 94; 2 *Gray,* 532; 7 *Id.* 72.

2. The ruling upon the question of sanity was laid down with clearness, and is, at least, sufficiently favorable to the appellants.—12 *Mich.* 459; *Redf. on Wills,* p. 103, 124–130, *and cases cited.*

Cooley J.

Several questions of practice arise in this case in regard to the order of proceeding in the Circuit Court on the trial of appeals in testamentary cases. Hosmer and Bissell were proponents, in the Probate Court, of the will of Cyrus W. Jackson, for Probate; and it appears by the record that the will was allowed by that Court, and that Taff, who was sole contestant, appealed.

The pleadings on the part of the proponents in the Circuit Court, were in conformity to the ruling of this Court in *Beaubien v. Cicotte,* 8 *Mich.* 9, which required an allegation that at the time of the execution of the will the decedent was of sound mind. The contestant pleaded the statutory general issue, and also denied, specially, the soundness of mind and competency of the decedent. This special plea, we apprehend, was entirely unnecessary, and does not in any way affect the case. Sanity is involved in the due execution of a will; and even if it were not, the general plea would put it in issue where it is necessary for the proponents to aver it. The contestant also denied,

specially, the execution of the will by Jackson; and also that the proponents, who are named executors therein, were suitable persons for that trust.

It appears that immediately on a jury being sworn, the contestant claimed the right to open his case to the jury, and introduce his testimony before the case on the part of the proponents should be gone into. The Circuit Judge denied the right, and the contestant excepted.

We are referred to no authority which would sanction the course here proposed, and it cannot be seriously argued that it would be correct practice. The formal execution of the will was not only not admitted, but it was specially denied by the pleadings; and the offer of the contestant proposed to take the case into his own hands at a stage when there was nothing for him to contest, and when, if the case was submitted without evidence from the proponents, he would be entitled to a verdict against them, as of course. To state the position is to demonstrate its fallacy. A defendant may be entitled to open the case when the pleadings are such as, in the absence of proof, would establish the right claimed against him; but he can neither be required, nor is he entitled, to open it for the purpose of disproving allegations not yet in any manner supported, but which the plaintiff must prove in order to entitle him to a verdict. If the contestant had the right to open, he would equally, at his option, have been entitled to a verdict; for he need only abstain from putting in any evidence, and the proponents, having none to reply to, would be entirely excluded from giving any. The objection thus taken is therefore manifestly unsound.

The real questions, however, which the contestant has presented for decision, arise more properly upon subsequent rulings, and relate to the issue on the point of sanity, and on the right to open and close the argument. It appears that the proponents, being allowed to go forward with their evidence, confined it to an examination of the subscribing witnesses, who testified to the formal execution of the will, and that Jackson

at the time was of sound mind. The contestant then put in evidence tending to show a want of testamentary capacity, and rested his case. The proponents were then allowed by the Court, against the objection of the contestant, to go fully into the question of sanity; not by way of reply merely, but to put in affirmative evidence as fully as if the ground had not been covered by their evidence at the outset. And at the conclusion of the proofs, the proponents were allowed also, against objection, to open and close the argument.

It is inferrible from the record that the Judge did not allow the proponents to put in the affirmative evidence of Jackson's sanity, after the contestant had rested, as a matter of discretion merely, but on the ground of legal right; and error is, therefore, properly assigned on his ruling.

There can be no doubt that the practice followed by the Circuit Judge, in this case, is that which has always prevailed in this state. The party assuming the burden of establishing a will, has not supposed himself bound, in his opening, to go further than to give evidence, by the subscribing witnesses, of those facts which would make out, *prima facie*, a valid testamentary instrument; and has left all further evidence on the subject of mental capacity to be brought in by way of answer to that adduced by the contestant. The evidence at the opening has usually been of a formal character, and the proponent has confined himself to inquiries of a general nature respecting the signing and attestation, and whether, at the time, the party appeared to understand the business in which he was engaged. He has not been required to put in his whole case on the question of mental competency before resting, and the cases are probably exceptional, where he has gone beyond calling the subscribing witnesses, unless they failed to testify to such facts as would establish a *prima facie* case.

So far as the order of proof is concerned, we cannot, in the least, doubt that this practice is altogether sensible and correct. To prove that the decedent was not insane, is to prove that an exceptional state of facts did not exist; in other words, it is to

prove a negative; and on general principles very slight evidence only should be demanded of the party called upon to take the burden of proving such a state of facts.—*Stephens v. Young*, 9 *Mich.* 500. And this evidence is generally with entire propriety confined to the time when the will was executed; the subscribing witnesses being allowed to express their opinions upon what they observed at that time, however limited may have been their opportunity for observation, and not being required to go further, except upon cross-examination. The defense then takes the case, and enters upon proof of the alleged incompetency. But now, although all the proofs are to point to the decedent's condition at the moment when the will was executed, from the very nature of the case the evidence will almost always immediately diverge widely from that which has been put in by the proponent, and instead of being confined to rebutting the *prima facie* case by the observation of other witnesses at or near the same period of time, it will bring into the case new facts, exceedingly diversified in their character, relating to periods of time widely apart, and which could not possibly be anticipated in all their particulars by the proponent when he gave his testimony. The contestant's evidence, instead of assuming the ordinary features of rebutting evidence — which is commonly directed to the same point of time as that which it rebuts — now brings before the Court the whole life of the decedent for a long period of time, and a long array of circumstances not in the least connected with those stated by the witnesses in chief, except as inferentially they may tend to show that the decedent's condition could not have been what was stated by those witnesses, inasmuch as it appeared to be different at other periods. How wide shall be the range of inquiry by the defense, is a question addressed to the judgment and discretion of counsel, and not at all depending upon the evidence put in by the proponent. It covers facts, observations, and opinions; and in cases of difficulty, not even the contestant himself could anticipate before entering upon his case, the precise bounds it would be proper to set

to his inquiries, or how far the minute facts and apparently trivial circumstances testified to by one witness might make it important to put others upon the stand. The defense, therefore, are seeking to disprove the main fact shown by the proponent by proving a vast number of new facts, relating to other times and conditions; the testimony being affirmative in its character though directed in its inferences to the establishment of the negative fact of mental incompetency. All rules of evidence are designed to elicit the truth; and it is obvious that to require the proponent to anticipate, at his peril, the case that would be shown by the defense, would, in many cases, be equivalent to a denial of justice. For although there would still be a right to give rebutting evidence, this, in the sense in which rebutting evidence must then be understood, would be of little value, since it must be confined to disproving the facts and circumstances shown by the defense. But the facts in such a case are only important for the inference to be drawn from them; and the inference must generally be rebutted not by disproving those facts, but by showing others from which the contrary inference is drawn. And what other facts, or even what class of facts it shall be important to show, cannot be known until the defense is in, so that if the proponent should be required to go forward with all his proofs, he would often be found to have occupied the time of the Court with evidence made immaterial by the course subsequently taken by contestant's proofs, and which entirely failed to anticipate the defense.

In point of fact, the evidence which the proponent puts in at the outset, only answers to that inference which the law draws in favor of sanity when any other act is in question; and the course which the case assumes is not different from what it would be if the proponent could rest upon a presumption of competency until it was overthrown by the contestant's proofs. Where a party claims through a deed, which is assailed for incompetency in the grantor, the burden is upon him to establish the deed; but his *prima facie* case is made out

when he has put in the formal proofs of execution, these being supplemented by the legal inference of competency. If the defense then gives evidence tending to show mental unsoundness, the plaintiff cannot be precluded from going fully into the question with his proofs, by the fact that at the outset a case was made on his behalf, which covered that point. And where a tax title is assailed for defect in the proceedings, it can hardly be doubted that the party claiming under it is entitled, by way of reply, to go into affirmative evidence of regularity, notwithstanding he made a *prima facie* case at the outset by the production of his deed. He has a right to rest upon this *prima facie* showing, until evidence assailing it has been given; and the case is then fully open to his proofs.

The question. of the right to go forward in the argument is usually settled when we have determined who has the affirmative of the issue. The question is not affected by the fact that on some parts of the case the other party may be required to assume the burden of proof, or that even as to the main branch of the case the party having the negative of the issue may be required to establish an affirmative case. The right to open the argument belongs to the party who has the right to open the proofs; and that belongs to the plaintiff whenever there is any portion of his case which he is required to support by evidence. — *Booth v. Millns*, 15 *M. and W.* 669; *Price v. Seaward, Car. and M.* 23. If his claim is met by the general issue the right is his, in all cases; and it can make no difference that special defenses are interposed, if in fact the general issue covers them. Special pleas interposing such defenses would be demurrable by common law rules. — Mr. Baron *Alderson* in *Amos v. Hughes*, 1 *M. and Rob.* 464, gives as the proper test of the right to begin, the question, which party would be successful if no evidence at all were given? — and in testamentary cases this, under our statute, when testamentary capacity is denied, would always be the contestant, even if the formal execution of the instrument was admitted. The proponent has therefore not only the affirmative of the issue

in point of form, but the burden of proof as to the whole case rests upon him; and if no proofs are put in by the other party, he would still not be entitled to a verdict if he had failed to put in proofs extending to each branch of the case. His right to open and close the argument is therefore unquestionable.

Another error is assigned upon the charge of the Court. It appears that among other things the Judge told the jury that "The only issue now presented and in dispute, is, whether the will in question is the will of Cyrus W. Jackson; that is, whether at the time it was executed he had a sound and disposing mind and memory." Objection was taken to this, with all the other parts of the charge, by an exception designed to be distributive in its application, but which did not call the attention of the Judge specially to the error supposed to be embodied in any particular portion. It is possible that this objection, when made, was well based; but the record before us does not disclose any error. The statement of the judge which is excepted to has reference, evidently, not to the formal issue in the case, but to the point actually disputed on the trial; and he is calling the attention of the jury, not to the points which will be covered by their verdict, but to the particular fact which the parties have been contesting before them, and to which the opposing evidence has been directed. He speaks of the point in dispute as being Jackson's competency; as if the other facts, though covered by the issue, had not been brought into question on the trial.

So far as we can judge from this record, his statement was entirely correct. It is to be inferred from the recitals in the bill of exceptions, that the defense gave evidence on the question of competency, and then rested their case; that they put in testimony to no other point; and as the bill states that the subscribing witnesses gave evidence tending to show the due execution of the will, there is nothing here to lead us to infer, — if, in fact, we had a right to presume error, — that any point was made except upon mental capacity. The statement was a statement of fact, and not an instruction upon a point

of law; and as it related to what was taking place in their presence, the jury knew whether it was true or not as well as the Judge. If in fact anything besides competency was disputed, and counsel thought this statement likely to lead the jury to overlook their objections on other points, it was their duty, instead of taking this general exception, to call the Judge's attention to any other ·branch of the case in dispute, that he might have an opportunity to correct the error. The error, if there was one, must have been one of inadvertence; and if parties come here for the correction of such errors, instead of affording an opportunity in the Court below, all reasonable inferences from the record should be drawn against them. But it is not necessary to·apply any such rule here, as the bill of exceptions, in all that it discloses of the proceedings on the trial, supports this statement of the Judge.

We find no error in the record, and the judgment must be affirmed.

The other Justices concurred.