## MARIA M. BARBER AND OTHERS' APPEAL FROM PROBATE.

Hartford Dist., Oct. T., 1893.   ANDREWS, C. J., CARPENTER, TORRANCE,
FENN and BALDWIN, Js.

Where the proponents of a will have introduced formal proof of the capac-
ity of the testator, their burden is discharged, and that of proving in-
capacity rests on the party alleging it.

The law presumes every man sane until the contrary is shown, and this
presumption applies to the case of a testator whose incapacity is alleged.

And especially does the burden of proof lie upon the contestants of a will
where the incapacity alleged is an insane delusion upon a single point,
while the testator was otherwise of sound mind.

The question on the whole case would be, whether the evidence of the con-
testants sufficiently preponderated over that of the proponents, includ-
ing both the testimony of the attesting witnesses and the rebutting
evidence, to overcome the presumption of sanity which constituted
the proponents' *primâ facie* case.

Where an expert witness is asked his opinion upon certain facts proved,
the weight of authority is that the facts should be stated in the question.

So far as any discretion in the matter is to be allowed the presiding judge,
it is limited and must be used sparingly.

The question should present such assumptions of facts, and such only, as
counsel may fairly claim that the evidence in the case tends to justify,
and while it may not be improper because it includes only a part of the
facts in evidence, it would be so if, by reason of such omission, it fail-
ed to present the facts which it did include in their just and true rela-
tion.

Certain diaries kept by a testator were held to be admissible to prove his
mental capacity, while not admissible as proof of the truth of the en-
tries.

The laying in of a large number of letters in a mass, unread, for the jury
to examine or not as they should feel inclined, held to be improper.

Where letters of a testator were read to the jury for the purpose of show-
ing his mental capacity, it was held that the letters received by him and
to which his were replies, might be read to the jury, that they might
be better able to judge of the character of his own letters; and the
memoranda of their dates made by him on the letters were held to be
sufficient *primâ facie* evidence that they were what they purported to
be, the question not being as to the truth of their statements or as to
their authenticity.

It is provided by Gen. Statutes, § 1094, that "in actions by or against the
representatives of deceased persons memoranda of the deceased, rele-
vant to the matter in issue, may be received as evidence." Held that
an appeal from the probate of a will is not an "action" within the
meaning of the statute.

[Argued October 5th—decided October 25th, 1893.]

APPEAL from a probate decree approving the will of James S. Barber; taken to the Superior Court in Hartford County, and tried to the jury before *Robinson, J.* Verdict setting aside the will, and appeal by the original appellees. The case is fully stated in the opinion.

*W. C. Case* and *W. S. Case*, with whom was *T. C. Waterous*, for the appellants, (original appellees.)

*C. H. Briscoe* and *A. F. Eggleston*, with whom was *W. J. McConville*, for the appellees, (original appellants.)

FENN, J. An appeal having been taken to the Superior Court from an order and decree of the court of probate for the district of East Windsor proving and approving an instrument purporting to be the last will and testament of one James S. Barber, disposing of a considerable estate, on the trial to the jury the validity of the instrument was contested, mainly on the ground that the alleged testator was not of sound and disposing mind and memory at the time of its execution. The jury returned a verdict setting aside the will, which was accepted by the court and judgment rendered thereon. From that judgment an appeal was taken to this court and several reasons of appeal assigned.

We will consider first, as of the greatest general importance, the exceptions to the charge to the jury. Upon the trial the proponents and present appellants, having introduced the alleged will, also introduced the evidence of the two surviving witnesses to the will, tending to prove, and which they claimed did prove, its due execution, and that the testator was of sound and disposing mind and memory at that time. They then rested, and the contestants went forward and introduced evidence to show the want of capacity, mainly, as was claimed, because of the existence of an insane delusion existing in the mind of said Barber in reference to the paternity of his children. This was met by evidence offered by the proponents in rebuttal. The court, in the course of its somewhat lengthy charge to the jury, made

several more or less direct references to the subject of the burden of proof upon the question of capacity. We will quote such portions of these references as seem in any way material. Early in the charge the court, having explained what constitutes testamentary capacity, said:—" If, gentlemen, you are satisfied by a fair preponderance of the evidence that the testator had this kind of mental capacity, understanding and strength at the time of making this will, it will be your duty to find that he was of sound mind, and upon this issue render a verdict for the proponents and in favor of the will. If, on the other hand, you are not satisfied by a fair preponderance of evidence that the testator, at the time of executing this will, had the kind of mental strength and capacity which I have been describing to you, it will be your duty to find that he was not of sound mind, and your verdict should be for the contestants and against the will. The burden of proof as to the soundness of mind of the testator lies, in every case, on the parties relying on the will, and they must satisfy you that it is the will of a capable testator, and when the whole matter is before you, on evidence given on both sides, if the evidence does not, by a fair preponderance of it, satisfy you that the will is the will of a competent testator, you ought not to affirm by your verdict that it is. In other words, if, when the whole matter is before you on the evidence given on both sides, it is left uncertain whether or not the testator was of sound mind, then it is left uncertain whether a person of sound mind, within the meaning of our statute, has made the will, and the will should not be sustained. In the course of the trial the balance of evidence may fluctuate from one side to the other, but the burden of proof remains where it was at the outset, upon the advocates of the will, and unless, at the close of the trial, the balance is with the advocates of the will, unless the beam of the scale tips down on the side of the advocates of the will, they must fail. It is not sufficient that the scales stand evenly balanced. There must be a fair preponderance in the proponents' favor to justify a verdict sustaining a will. As I have before said to you, no person

unless of the age of eighteen years and of sound mind can dispose of his or her property by will. Hence, when the advocates or proponents of the will present the instrument, they must satisfy you by a fair preponderance of the evidence that the deceased, at the time he executed the will, belonged to the class of persons who by law can make wills." Towards the close of the charge the court said:—" In the case at bar the burden of proof is upon the executor to show that Mr. Barber was, at the time of the execution of his alleged will, of a sound and disposing mind, and if upon the whole evidence you are uncertain whether at the time of the execution of said alleged will he was of sound mind or not, then it is left uncertain whether, under the statute, he was capable of making a will, and it is your duty to render a verdict for the contestants. And I will further add, that to render a will invalid because of unsoundness of mind of the testator, it is not necessary to show that at the time of making the supposed will he was demented or an imbecile and wholly deprived of sense. It is sufficient if you are satisfied by a fair preponderance of the evidence that he was affected with an insane delusion or delusions, and that the provisions in his will were the product of such insane delusion or delusions." The proponents, in their reasons of appeal, complain that this charge of the court, and especially the matter contained in the last quotation, (as well as in several other portions of the charge which we have deemed it unnecessary to quote,) was confusing and contradictory. Confining our comments to the language quoted, we are constrained to say that it appears to us that there is some apparent foundation for this criticism. Taking the language used strictly, and without qualification, there would seem to be three conflicting rules, each distinctly stated; first, that the burden of proving that the will was the sane act of the testator, by a fair preponderance of evidence, lies " in every case," and remains throughout the trial, upon the proponents of the instrument; second, that the burden on the proponents is not that of proof by a fair preponderance of evidence, but by such evidence as brings certainty upon the point to the minds

of the triers; third, that in order to defeat the probate of a will on the ground of its being the product of an insane delusion or delusions, the jury should be satisfied by a fair preponderance of evidence of the existence and effect of such delusions. If the last of these rules had stood alone, and had been so stated that the jury might be presumed to have understood it, and that it was their duty to be guided by it, the proponents' ground of complaint against the charge, which we are at present considering, could be dismissed. But, taking the language which we have quoted as a whole, (and there is nothing elsewhere in the charge which in any manner explains or modifies it,) it is not only possible to see how the jury may have been misled, but it is impossible to see how it could have been otherwise. The statement twice made in different portions of the charge, that " if, when the whole matter is before you, on the evidence given on both sides, it is left uncertain whether or not the testator was of sound mind, then it is left uncertain whether a person of sound mind, within the meaning of our statute, has made the will, and the will should not be sustained," would, as it appears to us, be likely to impress the jury and remain in their minds as the salient feature of the charge. Such a principle, if correct, would have the advantage of being most easy to understand and to apply. The trouble is that it is manifestly incorrect; none the less because it appears to be a quotation from the language of the Supreme Court of Massachusetts, in the case of *Crowninshield* v. *Crowninshield*, 2 Gray, 524, 534, and so much so that it would be injustice to the learned judge to believe that he intended it to be understood, or believed that it would be understood, by the jury literally, strictly, and without qualification, as by the word "equally," before "uncertain," or by the other· language which immediately preceded and that which immediately followed it, as it seems to us, nevertheless, that it must have been. On this ground, therefore, it must be held, (as further claimed by the proponents,) that the charge of the court was erroneous.

But a question of more general interest and importance·

remains to be considered, in reference to the portion of the charge which states as the rule that the burden of proof as to capacity, by a fair preponderance of evidence, remains in every case and throughout upon the proponents of the will. The inquiry is whether this is a correct statement of the law and practice in this state, or rather, what the correct rule and principle is.

In considering this question an examination at length of the decisions in other jurisdictions would be of little practical utility, for the slightest inspection will disclose an irreconcilable conflict of views and opinions upon the subject. Thus, in 2 Greenleaf's Evidence, 15th ed., § 689, it is said in the text: " In regard to *insanity* or want of sufficient soundness of mind, we have heretofore seen that though, in the probate of a will, as the real issue is whether there is a valid will or not, the executor is considered as holding the affirmative, and therefore may seem bound affirmatively to prove the sanity of the testator, yet we have also seen that the law itself presumes every man to be of sane mind until the contrary is shown. The burden of proving unsoundness or imbecility of mind in the testator is therefore on the party impeaching the will for this cause ; " while, in a note to the same section, authorities are first given in support of the doctrine stated in the text, and then it is said that " it is not so held universally, and the better rule is that the burden of proof, both of the execution and of the capacity of the testator, is upon him who attempts to set up the will." Authorities in support of that statement are then given, and the note then ends with these words :—" Indeed, the question of the burden of proof in a plea of insanity is one which is variously decided," a statement which, satisfactory or not, is doubtless correct. We shall therefore, so far as a consideration of the authorities elsewhere is concerned, content ourselves with saying that, while in some of the states the burden of proving want of capacity is held as stated in the text of Greenleaf to be throughout upon the contestants of a will, in others, and perhaps most, either by virtue of statutes or in accordance with the decisions of the courts of last resort,

affirmative proof of sanity is required from the proponents, but that, generally speaking, in such jurisdictions, notwithstanding such requirement of affirmative proof of capacity, the general presumption of sanity is held to continue, and that if the evidence is balanced, and so doubtful, such presumption should prevail. *Trish* v. *Newell*, 62 Ill., 196 ; *Carpenter* v. *Calvert*, 83 id., 62 ; *Delafield* v. *Parish*, 25 N. York, 9 ; *Hawkins* v. *Grimes*, 13 B. Monroe, (Ky.,) 257. Or else it is held that on formal proof of capacity by the attesting witnesses, the burden of the proponents has been discharged, and thereafter rests upon the party alleging incapacity. *Sloan* v. *Maxwell*, 2 Green's Ch., (N. J.,) 563 ; *Yoe* v. *McCord*, 74 Ill., 33 ; *Mayo* v. *Jones*, 78 N. Car., 402 ; *Thompson* v. *Kyner*, 65 Penn. St., 368 ; *Egbert* v. *Egbert*, 78 Penn. St., 326 ; *Rich* v. *Bowker*, 25 Kan., 7 ; *Cole's Will*, 49 Wis., 179. Important cases illustrative of these views are *Perkins* v. *Perkins*, 39 N. Hamp., 163, and *Taff* v. *Hosmer*, 14 Mich., 309. In the former case the court said :—" That every man is presumed to be sane is abundantly proved by the authorities. We think that although the subscribing witnesses, if they can be produced, must be examined in relation to the soundness of the testator's mind, yet the party propounding a will for probate is under no general duty to offer any evidence of the testator's sanity, but may safely rely upon the presumption of the law that all men are sane until some evidence to the contrary is offered." And it was further said that, though the burden of proof is upon the party who asserts the validity of the will, and this burden remains upon him until the close of the trial, he need introduce no proof upon this point until something appears to the contrary. In *Taff* v. *Hosmer*, COOLEY, J., delivering the opinion of the court, said :—" The party assuming the burden of establishing a will has not supposed himself bound, in his opening, to go further than to give evidence by the subscribing witnesses of these facts, which would make out, *primâ facie*, a valid testamentary instrument, and has left all further evidence on the subject of mental capacity to be brought in by way of answer to that adduced by the contestant. The evi-

dence at the opening has usually been of a formal character, and the proponent has confined himself to inquiries of a general nature respecting the signing and attestation, and whether at the time the party appeared to understand the business in which he was engaged. To prove that the decedent was not insane is to prove that an exceptional state of facts did not exist. In other words, it is to prove a negative, and on general principles very slight evidence only should be demanded of the party called upon to prove such a state of facts." See also *Banker* v. *Banker*, 63 N. York, 409; *Dean* v. *Heirs of Dean*, 27 Verm., 746; *Turner* v. *Cook*, 36 Ind., 129; *Herbert* v. *Berrier*, 81 Ind., 1; *Jenkins* v. *Tobin*, 31 Ark., 306; *Stubbs* v. *Houston*, 33 Ala., 555. The above language of Judge COOLEY states very correctly, we think, the existing practice in this state, except perhaps as to the form of the inquiry put to attesting witnesses concerning the capacity of the testator. And the views expressed as to the character of evidence of the non-existence of insanity, pertinent as they are, would be even more so when, as in the case before us, the issue raised was mainly as to the existence in the mind of the alleged testator of an insane delusion on one point only, consistent with general capacity to do business and to manage successfully a large estate, concerning which delusion the court in its charge, at the request of the contestants, said to the jury :—" When the mental disorder is a delusion upon one or a few particular subjects, the testimony of persons with whom he has not had occasion to speak on those subjects is of not so much weight as that of those with whom he had occasion to speak on those subjects,"—a statement, the correctness of which in point of law the counsel for the contestants in their brief concede, by saying that the court could have gone further, and have charged the jury in the language of DENIO, C. J., in *American Seamen's Friend Society* v. *Hopper*, 33 N. York, 631, that under such circumstances " the testimony of persons with whom he has not had occasion to speak on those subjects is of *no* weight." It ought, we think, to be manifest that, if this be correct, the position of the proponents of

a will attacked on the ground of an insane delusion on one or a few particular subjects existing in the mind of the claimed testator, compelled to bear throughout and unrelieved by any presumption of sanity, (even, as it would seem, by a presumption that if the decedent was sane on subjects generally he was so as to all until the contrary appeared,) the burden of proving the non-existence of any form, general or special, of incapacity, which could have affected the provisions of the instrument—a burden which, though negative in its nature, could only be discharged by positive evidence,—the evidence of those who had talked with the testator on subjects which the proponents of the will may claim never entered into his thoughts at all; if this, we say, be a correct statement of the law, the position of the proponents of a will must be difficult in the extreme.

But it is time that we came to an examination of the Connecticut decisions, and the rule to be deduced from them. In *Comstock* v. *Hadlyme Eccl. Society*, 8 Conn., 254, it was held that on an appeal from a decree of a court of probate establishing a will, the burden of proof as to the capacity of the testator rests upon the party claiming under such will, who is therefore entitled to go forward on the trial. This decision was approved and affirmed in *Knox's Appeal*, 26 Conn., 22, and followed in *Dale's Appeal*, 57 Conn., 157, and *Livingston's Appeal*, 63 Conn., 74. It is the settled and undoubted law of this state. But this statement does not decide—it is only preliminary to the real question before us,— what is the nature, character and extent of that burden? What does it demand of the proponents? It requires, in the first instance, that one or more of the subscribing witnesses, if alive and within reach of the process of the court, should be called and examined in reference both to execution and capacity. It is the right of the party contesting the validity of the will to require that all the attesting witnesses so within reach of process should be called, but such right is waived where no demand is made therefor before the final closing of the evidence in the case. *Field's Appeal*, 36 Conn., 277. The testimony thus adduced is by practice confined to the

appearance, conduct and surroundings of the testator at the time of the execution of the will and the opinions of the witnesses based thereon. If such opinions are favorable to the sanity of the testator, then, having thus introduced the subscribing witnesses to these points, " by the practice in this state the proponents rest, and the contestants go forward with their evidence, and the proponents then rebut." *Dale's Appeal*, (*supra;*) *Livingston's Appeal*, (*supra.*) Waiving, for the present, the question as to what would be the case if none of the subscribing witnesses could be procured, or if those called expressed opinions unfavorable to the capacity of the decedent, and assuming the due testimony of such witnesses to capacity as well as execution, what then becomes of the burden of proof, now that the *primâ facie* case has been made out and the proponents have rested? In the case of *Comstock* v. *Hadlyme Eccl. Society*, (*supra,*) that of *Brooks* v. *Barrett*, 7 Pick., 94, was referred to as authority. That case was indeed practically overruled in Massachusetts by *Crowninshield* v. *Crowninshield*, (*supra.*) But notwithstanding that fact, several years after the later decision our court, in *Knox's Appeal*, (*supra,*) again referred with approval to *Brooks* v. *Barrett*, saying that it was there held " that where a will is opposed on the ground of the testator's insanity when it was executed, those who insist on its probate have the burden of proof in the first instance, and after they have proved the sanity of the testator by the subscribing witnesses, the burden will be shifted on the other party to prove insanity." And the court also cite *Cilley* v. *Cilley*, 34 Maine, 162, and *Gerrish* v. *Nason*, 22 id., 438, to the same effect. That this, in effect, however best expressed, is the law of Connecticut, has, we think, been the general understanding of the profession ever since *Knox's Appeal*. As an illustration, it may be observed that in *Dale's Appeal* counsel for the contestants of Mrs. Munson's will, (not the proponents,) requested the court (see p. 130, request 5) to charge the jury that "in ordinary cases, if the attesting witnesses to a will all agree in the opinion that the will was duly made and executed, it throws the burden of proving affirmatively the ex-

ercise of undue influence, *or want of testamentary capacity*, on the heirs who may contest the will; " claiming however that the case then on trial was exceptional. The trial court, although not charging in the language requested, apparently had the same view, and expressed it by twice using the language quoted by this court in *Knox's Appeal* from *Brooks* v. *Barrett*, that the burden of proof was upon the proponents "in the first instance," and the charge was approved by this court. And the same view appears to be clearly held in *Livingston's Appeal*, p. 75. Opposed to this form of expression however, as to the shifting of the burden of proof during the trial of a case, are the *dicta*, in this state and elsewhere, that the burden of proof never shifts, that it remains on a party whose duty it primarily is to prove a fact in support of his case, and does not change in any aspect of his cause; that while the weight of evidence may shift from side to side in the progress of a trial according to the nature and strength of the proofs offered in support or denial of the main fact to be established, the burden continues where it was at the outset.

The term "burden of proof" is, after all, and no matter how important it has become through universal adoption and use, a mere form or figure of speech. Accordingly, as one view or another of its significance has been held, one style or the other of these seemingly inconsistent expressions has been used to denote entirely consistent meanings. What we are now concerned to do is to discover, if we can, and to express as clearly as we can, the true underlying principle and rule, that is to say, the law of this jurisdiction in relation to the matter in question. Assuming then as the better form of statement, in accordance with modern phraseology, that the burden of proof does not shift, and that such burden is placed primarily, in reference to sanity, on the proponents of a will, what duty is thereby imposed? The statute provides that all persons of a certain age and of sound mind may make wills. It is therefore incumbent on the proponents to prove that the alleged testator was of sound mind. But the law presumes every person to be so until the con·

trary is shown, and this presumption is of probative force in favor of the proponents of the will. It would be sufficient in the first instance, were it not that, for reasons clearly indicated in the opinions in *Knox's Appeal* and *Field's Appeal*, the practice has grown up and become law, of requiring the presence in court of such·of the attesting witnesses as are within reach of the process of the court, and evidence from some or all of them in reference to capacity. They are " the persons whom the law, in its wisdom, has provided should be placed about the testator, at the time and place of the execution of the will, in order that they may have means and opportunity of judging of his capacity, and may protect both the testator and the heirs." It is for this reason, as this court explicitly said in *Field's Appeal*, that the heirs have a right to insist that the triers shall have the benefit of the observation and opinions of all the witnesses if practicable, and that the party seeking to establish the will shall, unless the requirement is waived, put them on the stand. The making of a will, said this court in *Knox's Appeal*, " is of so much importance, and it is so often, not to say so generally, done under circumstances of great bodily debility, likely to produce more or less mental derangement, that the statute has very properly required three witnesses." Having required them, it is as natural to hold that they should be called or their absence legally accounted for. Failure to do this would raise a natural inference against the validity of the will, which would properly go very far to overcome the presumption of law in its favor. So also it may be said that if, when called, they fail by their evidence to support the capacity of the testator, so far as the facts related by them as existing at the time and their opinions based on those facts are concerned, it may well be claimed that they disprove the presumption of sanity, and necessitate the production of other evidence of capacity before the proponents can rest as having established and made out a *primâ facie* case. But when the evidence of the attesting witnesses has been produced, and is in favor of the proponents, and they have thereupon rested, what has been made out? What is

embraced in the *primâ facie* case thus presented? Two things, certainly, as it seems to us—that the testator generally was of sound and disposing mind and memory, as established by the presumption of sanity, and that there was nothing in the surrounding circumstances, at the time of the execution of the instrument, suspicious in its character or calculated to affect or weaken such presumption. In other words, the testator was to be presumed sane until the contrary appeared, and the contrary did not appear at the time of the execution of the instrument and to those who witnessed it. This would be the necessary force of the evidence. It would perhaps be all its force if the witnesses called in were strangers to the testator and had no other opportunity than the brief act of signing afforded to judge of his condition or state of mind. It might, however, have an additional weight if the acquaintance or means of observation were greater or more extended. Whatever weight it had the proponents would be entitled to upon the whole case, but the essential elements of the *primâ facie* case would be as we have indicated. Now, the proponents having presented their *primâ facie* case, and rested, the contestants, as was said in *Dale's Appeal*, would go forward with their evidence, and the proponents then rebut. When the case was closed upon the evidence what would be the situation of the parties? The burden of proof as to capacity would remain upon the proponents. In their favor in the discharge of that burden would be the presumption of sanity, valid until overcome by opposing proof. Against it would be the evidence offered as to incapacity by the contestants. If it was evidence as to general incapacity, covering perhaps, as this court said in *Dale's Appeal*, p. 143, "long spaces of time in either direction," it would have been met, with more or less success, by counter evidence of the same character. If of delusions on one or more particular subjects, consistent with the general appearance of sanity and capacity, it would have been met, as such evidence alone could be met, either by disproving or discrediting the instances claimed, or by rendering their existence or influence upon the provisions of the will im-

probable by other instances, circumstances and conduct of an inconsistent character. In short, as was so clearly stated in the citation made from the opinion of Judge COOLEY in *Taff* v. *Hosmer, (supra,)* the evidence of the contestants would be offensive and affirmative in its character, and that of the proponents defensive and negative, and on the whole case the question would be whether the evidence of the contestants sufficiently preponderated over the rebutting and special evidence of the proponents, including the evidence of the attesting witnesses, to overcome the presumption of sanity which constituted the proponents' *primâ facie* case. In other words, leaving the presumption of sanity out of the case, was there more evidence of insanity than of sanity? So that, putting it again into the case, there would still be as much. Then and then only would the scales of justice, to which the court below in the case before us referred, be so adjusted, according to law, that it would be correct to say " unless at the close of the trial the balance is with the advocates of the will they must fail ; it is not sufficient that the scales stand evenly balanced." This consideration of the presumption of sanity in favor of the proponents' case, the court below, while holding them to a strict discharge of the burden of proof, failed in any form to recognize, and therefore, in this particular also, we must hold that there was error in the charge.

In addition to the reasons of appeal based upon the charge of the court to the jury, there are other reasons which remain to be considered. It is claimed that the court erred in admitting a hypothetical question addressed to Dr. Stearns, an expert witness for the contestants, against the proponents' objection. The hypothetical question is contained in the record, covering three printed pages. Fortunately we deem it unnecessary to quote it at length. It is only requisite to refer to some of the matters contained in it which appear to us improper elements to enter into such a question. Among the matters which the witness was asked to assume to be true, were that many different persons, after conversing with the testator and observing his conduct, believed him to be

insane.  We do not think such a belief of many others, pre-
sumably not experts, and opposed, as it doubtless was, by
the contrary belief of many others, constituted a legitimate
element of the basis of the opinion of the witness.  By de-
ciding upon that ground he would not only assume the
function of the triers, but would go farther, since they could
only consider such opinions in connection with the facts on
which they were based, while the witness had, in reference
to such opinions, no facts, except that many persons formed
such opinions after conversing with the testator and ob-
serving his conduct.  But there was no statement of the
conversation or description of the conduct.  Of course we
do not mean to intimate that if these had been added the
fault would thereby have been obviated.  Again, another
assumption was that "neighbors and friends who observed
his conduct advised his wife that it was unsafe for her to
remain there alone, and that she had better send for her
father to come and stay with her; and that she did so, and
he remained over night;" which is perhaps more clearly
improper in such a question, if anything can be, than the
other.  Again, "that he afterwards made a will, leaving his
daughter, whom he named by name, such an inconsiderable
amount of his property, although his estate was inventoried
after his death at more than $100,000, as to practically dis-
inherit her, and making like provision in his will for his
after-born children, which practically disinherited them."
In reference to this last quotation, if what the contestants
stated in the argument before us is correct, that the clear
estate of the testator would not amount to more than half
its inventory value, the statement of that, rather than the
true value, was the substitution of an immaterial for a more
material element, and it is to be noticed that the amount
left to the child, and also the provision for after-born chil-
dren, are not stated, but the omission is supplied by the as-
sumption and inference of the counsel propounding the
question, that they were "inconsiderable" and amounted
to "practical disinheritance;" very indefinite expressions,
calculated to produce very definite impressions.  And finally,

after three pages of statements, assumed facts, and infer-
ences, the question concludes thus—" That the jury find the
evidence of the physician, Dr. Whiton, which you have
heard, to be true." (Witness, " I heard that part of it.")
" Assuming that the testimony of Dr. Whiton, in connection
with those other propositions and facts I have named, were
true, and that the jury find them to be true, can you form
an opinion whether the testator was of sound and disposing
mind at the time of making his will?" Now what the
evidence of Dr. Whiton was does not appear. Whether it
would have been admissible to have asked Dr. Stearns sim-
ply if he had heard the testimony of Dr. Whiton, and if so,
then assuming it to be true what was his opinion, we need
not consider, except to say that if Dr. Whiton testified as
an expert, or as to matters of opinion, so that the question
called for an opinion from Dr. Stearns, based on the opinion
of Dr. Whiton, it clearly would not be. But supposing the
evidence of Dr. Whiton had been in regard to facts, as dis-
tinguished from opinions, even then, although the cases in
other states are in considerable conflict, we think the weight
of authority is that the assumed facts must be included in
the question. Our own court, indeed, seems to sanction the
idea of some discretion in the matter on the part of the pre-
siding judge, in *Roraback* v. *The Pennsylvania Company*, 58
Conn., 292, but the language used clearly denotes that
such discretion is limited and must be sparingly employed.
The court said—" But as there may be cases in which no
harm could be done by permitting questions which are to be
answered by the opinion of the witness to be asked without
such enunciation, we think it may fairly be left to the dis-
cretion of the presiding judge to prescribe the form in which
such questions must be asked, whenever it is necessary to do
so." But where, as in the question before us, a very great
number of particulars are " enunciated," many more than
any witness of normal capacity could be presumed to re-
member and keep distinctly in mind, the putting into such
a question, bodily, the evidence of another witness, to be
considered " in connection with those other facts and propo-

sitions named," is clearly objectionable on its face, and receives no justification or excuse from any possible "necessity." It is impossible for those interested in the answer to know the result of the mental process by which the witness made the required connection,—what portions of the evidence of Dr. Whiton he thus used, and in what way and to what extent it contributed to the result reached, the answer given. It is also a complaint of the proponents that the question as a whole was objectionable and misleading, because it " states the existence of certain conditions and the happening of divers incidents, (all for the purpose of determining the sanity of a man at a given moment,) without any statement as to their relation to one another in point of time or otherwise ; that is to say, without assuming any period of time for the happening of such incidents, and without giving the witness any right to assume such a fact, leaving him to believe that he may base his opinion on their having happened contemporaneously or in close continuous succession." There is certainly some apparent ground for this criticism also, though the record does not enable us to determine how nearly the belief of the witness as to the " close connection " would accord with the evidence on which the contestants claimed to base their hypothetical question. And we think that all we are required to say in reference to this objection is, that in this particular, as in all others, a question to an expert witness, testifying as to a person's mental condition, about which he has no personal knowledge, should contain such assumptions of facts and such only as counsel may fairly claim that the evidence in the case tends to justify, and that while such a question may not be improper because it includes only a part of the facts in evidence, it would be so if by reason of omission it manifestly failed to present the facts which it did include in their just and true relation, and caused them to appear in one that was untrue and unjust.

It was claimed by the contestants that, even if the question was objectionable, this reason of appeal of the proponents could not be supported. And this on three grounds :—

First, that the objection taken was in these words—"I desire to object to the question upon the ground that it does not state truly what the evidence in the case shows;" that this was saying merely that the question did not state the facts as they existed, which was not required by the rule, citing *Cowley* v. *The People*, 83 N. York, 470; second, that the court having permitted the witness against the proponents' objection to answer the question, the record does not show that any exception was taken to the ruling of the court; third, that the answering the question as framed could have done the proponents no harm; that it was one thing to inquire of the doctor as to the sufficiency of the data for an opinion, and quite another to ask him for his opinion as to the testator's actual mental condition, at a given time, upon the facts and propositions contained in the question. It seems to us that it was the duty of the proponents to point out in a more specific manner to the court the particulars in which the proposed hypothetical question was objectionable, and under the circumstances we do not think the court committed an error in admitting the question for which a new trial should be allowed. But as such new trial must be granted for reasons before given, we have stated our views for the guidance of the parties upon such trial, and for the information of all who may be interested or concerned in the question.

As explaining the basis of the three remaining reasons of appeal we quote the following from the record:—" The proponents offered in evidence, for the purpose of showing the mental capacity of the testator, the diaries of the deceased from 1885 to 1891 inclusive, which were admitted and read in detail to the jury, consuming several days in such reading. Afterwards, during the trial, they further offered the entries in these diaries, as memoranda and declarations of the testator, for the purpose of proving such entries to be true in fact. Upon objection of the contestants' counsel the court limited the diaries and entries therein to the purpose for which they were originally introduced and admitted, and the proponents excepted.

During the trial the proponents offered a letter book of

the deceased, containing what were claimed to be copies of letters written by him to various persons, and such letter book was read entire to the jury, occupying two or three days in reading it, for the purpose of showing the mental soundness of the testator. After the book had been offered in evidence and read to the jury, the proponents offered in evidence a large bundle of letters, claimed by them to have been found by Mr. Barber's executor among his effects after his death, and to have been written to Mr. Barber by one or more correspondents, and which, as claimed by the proponents' counsel, were either answers to the letters, copies of which appeared in the letter book, or suggested the writing of the letters therein contained. The counsel for the proponents stated at the time of offering this bundle of letters, that he did not propose to read them, but merely to put them in without any proof of the authenticity of the letters, or of their having been received by the testator in the regular course of business, or presenting the authors of the letters in court for examination.

Upon the envelopes containing the letters, and upon the outside of the letters not inclosed in the envelopes, were pencil memoranda, purporting to have been placed there by Mr. Barber, and which were identified as in his hand-writing, and purporting to be memoranda of the dates of the letters. To the admission of the letters, under the offer of the proponents, the contestants' counsel objected. The court thereupon allowed the memoranda upon the outside of the envelopes and letters made thereon by Mr. Barber to go to the jury, but ruled out the contents of the letters themselves. The contestants excepted to this ruling of the court.

The contestants introduced one Parker, who testified that the testator was, in his opinion, of unsound mind, and among other things testified to a business transaction with Mr. Barber, in which Mr. Parker sold the testator a quantity of tobacco stems, which the testator refused to pay for, for the reason that the wind had blown the tobacco stems off the land on which they had been placed for fertilizing, and that they had therefore done him no good.

To contradict Mr. Parker the proponents offered a receipt for tobacco stems, signed by Mr. Parker, and found among Mr. Barber's effects ; and also offered an account book purporting to have been kept by the testator, containing an entry of cash purporting to have been paid to Mr. Parker for tobacco stems. Mr. Parker, having been called as a witness by the proponents, and shown the receipt, denied that the receipt was for the stems which he had already testified to as having been sold by him to Mr. Barber, but related to another and entirely different transaction which had taken place at an entirely different time, the item in the account book corresponding with the item in the receipt. The receipt was admitted in evidence for what it was worth, but the counsel for the contestants objected to the introduction of the account book for the purpose for which it was offered, to wit, to contradict Mr. Parker and show that the account for the tobacco stems was in fact paid. The court sustained the objection and the proponents excepted to the ruling.

That, as a matter of common law and unaffected by statute, the ruling of the court in reference to the diaries, admitting them for the purpose of showing the mental capacity of the testator, but not for the purpose of proving the entries to be true in fact, was correct, there can, we think, be no question whatever. The American cases on this subject are almost numberless, and, so far as we are aware, in entire accord in affirmance of this view. A large collection of such cases may be found in a note on page 156, vol. 11, American and English Encyclopædia of Law. But we need go no further for authority on this point than our own case of *Comstock* v. *Hadlyme Eccl. So.*, (*supra*.) The real contention of the proponents, however, appears to be, that such entries are now admissible in this state as evidence of the truth of relevant matters therein contained, by virtue of Gen. Statutes, § 1094, on the ground that an appeal from a probate decree, approving or disapproving an alleged will, is "an action by or against the representatives of a deceased person" within the meaning of that statute, and the case of *Pixley* v. *Eddy*, 56 Conn., 338, is cited as authority to that

effect. In that case this court held that a distributee of the property of a deceased person is his "representative," within the meaning of § 1094 and without the aid of § 1095, in a suit involving title to property. But we fail to see how this case reflects any light upon the present question. In the present case there can be no doubt that the proponents of the will are "representatives" of the deceased. The inquiry turns upon whether such an appeal is an "action" by or against such representatives, within the meaning of that provision. That such appeal is an action within the intent of some statutory provisions (Gen. Statutes, § 794,) is certain. " But this is not an ordinary case, and has never been treated as such in this state, but as a statutory and special proceeding." *Livingston's Appeal*, (*supra.*) In reference then to such a proceeding, was it the intention of the legislature, by the provisions of the statute in question, to change the existing common law in regard to the entries and memoranda of alleged testators? It seems to us not, and that the case of *Bissell* v. *Beckwith*, 32 Conn., 509, and the opinion of this court by BALDWIN, J., in the recent and still unreported case of *Rowland* v. *Phila., Wilm. & Baltimore R. R. Co.*,* abundantly show, first, that the statute should be "construed according to the apparent intention of the legislature, to be gathered from the entire language used, in connection with the subject and the purpose of the law;" and second, that such construction will not bring such appeal as the present within its purview. There was no error, therefore, in the ruling of the court below on this point.

Whether any distinction is to be drawn between the diary entries and the entry in the account book of cash purporting to have been paid to Mr. Parker for tobacco stems, it is not necessary to decide. For, even granting such entry to have been admissible, its exclusion could have produced no possible injury to the proponents. The receipt admitted, signed by Mr. Parker, corresponded with the item in the account book, and furnished the best and fully conclusive evidence

---

* The case next following.

of payment, which payment was not denied, the claim of Mr. Parker being that it was a different transaction from the one concerning which he had previously testified. On this point corroborating evidence of the admitted fact of payment would have been of no materiality.

So far as the letters are concerned, the only exception, as shown by the record, was taken, not by the proponents but by the contestants. But even if we were to assume, as we have no right to do, but as was most earnestly asserted by the proponents, that an exception was also taken by them, we think the proposition to lay these letters in, as a mass, unread, for the jury " to examine or not as they should feel inclined," was improper. *Billings's Appeal*, 49 Conn., 456, 459. We ought however perhaps to add, in view of what may probably arise upon another trial of this case, that if (as the record affords us some warrant for believing) the court refused to admit these letters because unaccompanied with proof of authenticity, or that they were received in the regular course of business, and because their authors were not produced for examination, such grounds of refusal, upon the facts stated, do not seem to us valid. The finding of the letters among the papers of Mr. Barber by his executor, with pencil memoranda upon them of the dates in Mr. Barber's hand-writing, would appear to be sufficient evidence, *primâ facie*, that they were what they purported to be, especially where the question was not as to the truth of any matters stated therein, or as to the authenticity of the letters, but as to the evidence of capacity which the testator's replies afforded, which could best be apprehended by knowing the contents of the writings themselves which the testator's letters purported to answer.

There was error in the charge of the court to the jury, as hereinbefore indicated, and for this reason a new trial is granted.

In this opinion the other judges concurred.