FANNIE FENTON v. IOWA STATE TRAVELING MEN'S ASSO-CIATION, Appellant.

**Accident insurance:** EVIDENCE OF ACCIDENT: CONCLUSIVENESS. In a
1   suit on an accident policy on the ground that assured accidentally fell from the window of the building, an admission by defendant that he so fell is not a conclusive admission that his death was accidental, but both parties are entitled to make a full showing as to the character of the fall.

**Argument:** RIGHT TO OPEN AND CLOSE: PREJUDICE. The ruling of
2   court determining the order of argument to the jury will not be reviewed in the absence of a showing of prejudice.

**Accidental death:** SUBMISSION OF ISSUES: INTOXICATION: EVIDENCE.
3   In a suit upon an accident policy excluding liability if assured was intoxicated at the time of the accident, the evidence is reviewed and held to require a submission of the issue and to warrant a finding that he was not intoxicated.

**Burden of proof:** INSTRUCTION. Where the court charged the jury
4   that the burden was upon the association to establish its defense of intoxication by a preponderance of evidence, the further instruction that by burden of proof was meant the obligation imposed upon a party alleging the existence of a fact, necessary in the prosecution or defense of an action, to establish the fact by proof was not misleading although it might well have been omitted.

*Appeal from Webster District Court.*— HON. R. M. WRIGHT, Judge.

THURSDAY, JULY 9, 1908.

ACTION on a certificate of insurance resulted in a verdict and judgment for plaintiff. The defendant appeals.— *Affirmed.*

*Healy & Healy,* for appellee.

*Sullivan & Sullivan* and *Maurice O'Connor,* for appellant.

LADD, C. J.— A certificate of membership in the Iowa State Traveling Men's Association was issued to James P. Fenton, May 13, 1901, and he was in good standing therein when he died September 13, 1904. Plaintiff is the beneficiary named in the certificate, and as such is entitled to recover the stipulated indemnity of $5,000 if death was accidental, unless some of the defenses interposed shall prevail. These were (1) that the injuries causing death were sustained while deceased was under the influences of intoxicating liquors; (2) that death happened on account or by reason or in consequence thereof; and (3) that the certificate of membership was obtained by fraud. No evidence was introduced concerning the last defense. The other two are based on by-laws exempting the association from liability "for any accident to a member while the said member is in any degree under the influence of intoxicating liquors or narcotics, or which shall happen on account or by reason or in consequence of the use thereof."

I. It appears that deceased had been a guest at a hotel known as the "Butler House" at Boone for several days. At 6:45 o'clock in the evening of Monday, September 13th the cook saw him sitting on the window sill of his room in the second story looking out, and twenty minutes later, she was startled by a noise, and upon looking from the kitchen window saw him on the ground below. A wire screen which had been on the window was found on the ground. It had been fastened by ordinary stops stuck through the sides of the frame and let into the casing or jamb. These stops had torn the latter somewhat as though the screen had been pushed out without pulling the stops. No one saw him fall, so that

1. ACCIDENT INSURANCE: evidence of accident: conclusiveness.

plaintiff was compelled to rely on circumstantial evidence to prove that death 'was by accidental means. The defendant admitted that deceased fell from the window, and on this ground objected to all evidence relating thereto. While from such admission the presumption arose that the fall was accidental it was not conclusive. The defendant was not precluded by its admission from introducing evidence tending to show the fall not to have been accidental, and, as under a by-law of the association, the injuries to deceased must have been by accidental means to authorize recovery, the plaintiff was entitled to make full proof that the fall was accidental.

II. No evidence tending to refute the presumption that death was by accidental means was introduced, and, at the close, counsel for defendant asked that they be allowed to open and close the argument to the jury. The court denied the request. It should have been granted. *Schoonover v. Osborne,* 117 Iowa, 427; *Shaffer v. Des Moines Coal & Hay Co.,* 122 Iowa, 233. But the ruling does not appear to have been prejudicial. In the case last cited the previous decisions of this court are considered, and the conclusion reached that in the absence of an affirmative showing of prejudice the ruling of the trial court in determining the order of argument to the jury will not be reviewed. It is purely a matter of practice, and seldom, if ever, can be said to involve the merits. There were but two issues for the jury in the case at bar to determine, both of which were simple and direct, and it is all but impossible that either of these could have been obscured or unduly elucidated by reason of the order in which counsel were heard by the jury.

2. Argument: right to open and close: prejudice.

III. As contended by appellant the deceased had been drinking intoxicating liquors excessively up to Sunday, September 11th, but, contrary to its contention, the evidence is in conflict as to whether he was in any degree under the

influence thereof at the time of his fall from the window on the day following. At about ten o'clock a. m.

3. ACCIDENTAL DEATH: submission of issues: intoxication: evidence.

Sunday he called on Dr. Myers, and informed him that he was suffering from insomnia and nervousness due to drinking and desired to "sober up." The doctor gave him a sedative. Deceased then remarked to the doctor's partner that he was now on the water wagon and was through. The physician called at his room in the evening and saw him about a half block away the following morning after nine o'clock, and was of opinion that at none of these times was deceased under the influence of intoxicating liquors. The two physicians who attended him after he fell until his death on the day following did not detect that he was under the influence of liquor, though he never gained consciousness; neither did they observe any odor thereof on his breath. Several others who worked over him also failed to note such odor. The undertaker upon introducing the trocar did not observe the smell of alcohol in the gas escaping. Several physicians testified that alcohol upon entering the stomach goes into the blood, and is carried to the lungs which eliminate it with the air, which is laden with the odor; that some of it passes off through the pores of the skin and the kidneys. They were of the opinion that it would be detected in the odor of the breath where a person had taken enough to produce intoxication.

No argument is required to demonstrate that from the foregoing evidence the jury might have found that deceased was not under the influence of liquor when he fell. Did that introduced by defendant negative conclusively the inferences to be drawn therefrom? The clerk of the hotel testified that the deceased was under such influence of intoxicating liquor all the time he was at the hotel up to five or six o'clock Monday morning when he was more sober than before and said he would get a drink and then "sober up." But the credibility of this witness was assailed by

evidence that he had said outside of court that he had not seen Fenton later than Sunday. The porter saw him for the last time Monday morning at eight o'clock when he thought he staggered as he left the house. The day before he had seen him at nine o'clock a. m., when he seemed "pretty well loaded" but more sober than before. The evidence thus far is met by that of Dr. Myers. Dale testified to seeing him buying whisky to take away, drinking and drunk at ten o'clock Monday morning, and Meyer, acting as city marshal, related that he had ordered him from the street in the afternoon of the same day, and West thought he saw him go into a saloon at about five o'clock. But three other witnesses saw him in a restaurant at two o'clock when he appeared to be in a normal condition, and Snell and another had seen him walking along the street shortly after five o'clock in the evening with nothing in his movements or appearance indicative of intoxication. Abel thought him intoxicated when leaning over a railing near a bank between three and five o'clock in the afternoon, but Collins testified that Abel had told him that deceased then appeared to be sober, and Paton observed him for about a half hour at the same place with no indications of intoxication. Rish testified to seeing him stagger along the hall in the hotel at about six o'clock, and another that he had noticed him weaving about his room uneasily prior to the fall. But the cook said he smiled at her rationally when she first noticed him in the window, and others saw nothing about him as he sat there indicating that he was under the influence of liquor. The superintendent of schools first reached him after the fall, and, though he did not notice the odor of intoxicants in his breath, he removed a bottle of whisky from his hip pocket which had not been touched. Bottles were found in his room, but these or others had been there several days. So that without reviewing the evidence farther, it may safely be said that as to whether he was in any degree under the

influence of alcohol when he fell was in dispute and to such an extent that the issue was for the jury to decide.

IV. As the sixteenth instruction the court told the jury that: " By burden of proof is meant the obligation imposed upon a party who alleges the existence of a fact

4. BURDEN OF PROOF: instruction.

or thing necessary in the prosecution or defense of any action, to establish that fact or thing by proof." This definition was evidently extracted from the concurring opinion of Brown, J., in *People v. McCann*, 16 N. Y. 58 (69 Am. Dec. 643), and contrary to appellant's contention cannot be construed to exact proof beyond reasonable doubt. In the opinion from which taken it was made use of in disapproving an instruction exacting proof of insanity beyond a reasonable doubt in order to constitute a defense. The term " burden of proof " is said in *Baxter v. Camp*, 71 Conn. 245 (41 Atl. 803, 42 L. R. A. 514, 71 Am. St. Rep. 169), to be an ambiguous one. " It may be used to indicate the burden which rests on every party to a cause persenting a claim for relief or pleading in avoidance, of going forward, if he be met by a traverse, and establishing what is well defined by an authoritative writer on the law of evidence, who has done much toward settling it in scientific form, as ' the total proposition or series of propositions which constitute the disputed case.' Thayer's Preliminary Treatise on Evidence, 380. It may also be used to denote a duty cast by law on one party to meet and rebut the effect of some piece of evidence introduced by the other, by proof of what may suffice to overcome it in the mind of the trier." See *Carver v. Carver*, 97 Ind. 497, 511. *Baron Parke in Barry v. Butlin*, 1 Curt. Ecc. 638, declared that " the strict meaning of the term ' onus probandi ' is this, that if no evidence is given by the party on whom the burden is cast the issue must be against him." See *Baldwin v. Parker*, 99 Mass. 79 (96 Am. Dec. 697). Another court defines " burden of proof as the burden of establishing a case." *Feurt v. Am-*

*brose,* 34 Mo. App. 360, 366. *In re Appeal of Barber,* 63 Conn. 393 (27 Atl. 973, 22 L. R. A. 90·), the term is said to have become through unanimous adoption and use but a mere figure of speech. A definition thereof, the meaning being well understood, will scarcely ever aid the jury in understanding it. In the case at bar the court had previously advised the jury that the burden was on the defendant to establish the defenses by a preponderance of evidence so that the giving of the definition was purely academic, and could have had no bearing either way in deciding the issues. It might as well have been omitted for it could not have aided and certainly did not mislead the jury.

The fourteenth instruction was a correct statement of the law concerning impeaching evidence, and the record was such as to render it proper.

The defects, if any, in other instructions, criticised as not being sufficiently explicit, are cured by those given at the request of defendant.

The record is without reversible error, and the judgment is *affirmed.*