# A. N. MOORE, SURVIVING PARTNER OF P. D. MOORE & CO., AND OTHERS *v.* THE SWANTON TANNING CO:, AND OTHERS.

## [IN CHANCERY.]

### *Pleading. Decree. Accounting. Private Corporation.*

1. Where a bill was brought for an accounting under a contract, and the decree in the court below included an account which accrued just before the contract was made, and the prior account was carried forward into the statements made to the defendants and never objected to by them, but was treated as a part of the account sued for, it was held that there was no error in the decree, and if necessary, an amendment would be allowed to the bill to include the prior account.

2. The orators and two of the defendants were members of a private corporation, engaged in the tannery business. The stockholders voted to consolidate its business with a tannery owned by the orators in another state. That vote was carried out to the extent of transferring the personal property of the foreign tannery to the defendant corporation, but not the realty; *Held,* whether the purchase of real property in another state was within the corporate powers of the defendant, it should account for the actual value of what it received.

3. As no question was raised in the report as to the value of the property, it is presumed that the master allowed on legitimate evidence the actual cash value.

BILL in chancery for accounting. Heard on the pleadings and a master's report, April Term, 1887, Ross, Chancellor. Decree that the bill is taken as confessed against all the defendants except Wright & Hunter. The orator is to have a decree against the Swanton Tanning Co. for the sum of $28,884.24 and interest since January 1st, 1887, and his costs with the right to take execution against the company, and have it satisfied upon any property of the company. The orator has no right to collect the dividends paid, nor have the company dissolved, and the bill is dismissed against Wright & Hunter without costs.

A. L. Wright and S. N. Hunter were two of the defendants. The firm of P. D. Moore & Co. was composed of Perley D. Moore and Allen M. Moore, the latter being the surviving partner of said firm. The Swanton Tanning Co. is a private corporation organized at Swanton, Vermont, under the provision of an act of legislature relating to private corporations, approved November 23d, 1870. See Revised Laws, chap. 153.

The master found that the corporation was organized "for the purpose of purchasing and tanning hides, the manufacturing of leather and of any articles composed in whole or in part of leather, and the selling and vending of the same; that the capital stock of the corporation was fixed by its articles of association at $25,000, divided into two hundred and fifty shares of $100 each; that it was located and had its principal office and place of business at Swanton in the State of Vermont; that the officers of the said corporation were a president, three directors, a clerk and treasurer, chosen according to law; that the first meeting of said corporation was held at Swanton, April 9, 1874, at which meeting A. L. Wright, Perley D. Moore and Edwin S. Meigs, were elected directors of said corporation, and that at a subsequent meeting of said directors on the same day, Perley D. Moore was made president and Edwin S. Meigs clerk and treasurer of said corporation, since which time no election or appointment of directors or officers has been held or made."

The capital stock was owned as follows: A. M. & P. D. Moore, 118 shares; A. L. Wright, 118 shares; Barney, 10 shares; D. S. Meigs, 4 shares. Wright afterwards transferred his shares to S. N. Hunter, but still retained an interest in them. On October 13th, 1874, at Swanton, Vt., the following agreement was entered into between Perley D. Moore of Boston, Mass., and said corporation:

" The said party of the first part agrees and by these presents bind themselves, their heirs and assigns to furnish the necessary amount of money to stock and run the tannery of the said Swanton Tanning Co., at Swanton, Vt., for 7 per cent. interest on the capital so furnished, and 2 per cent commission for purchasing hides, bark and paying labor and all contingent expenses including insurance, etc., requiring money to do the

leather manufacturing business, and 3 1-2 per cent. commission for selling the leather and all other products of said tannery, not guaranteeing the sales, for the term of five years from this date, no charges being made for travelling expenses, store or clerk hire, or any expenses attending to and doing the business in Boston, or in any other markets except what necessary clerk hire shall be necessary to do the business in Swanton at the tannery. The said party of the first part having possession of the said tannery and sole control of the running of it from this date and all funds that are expended and not provided for by the Swanton Tanning Co., for furnishing the tannery and curry shop for tools, etc., necessary to carry on the business, and all repairs shall be refunded to the said party of the first part by said Swanton Tanning Company and the said party of the first part are to keep a true and just account of all money so expended by them in said business and of all sales of leather, stock, etc., from said business, and render a true and just statement of the same to the said directors of said Swanton Tanning Co. at Swanton on the first day of January of each and every year during the term of this contract and all profits and losses made, after deducting money paid out in said business including interest, commissions, etc., shall be rendered to the directors of said company on the first day of January of each and every year during the term aforesaid, to be by them divided *pro rata* share and share alike among the several stockholders, and in consideration of the above agreements to be kept, done and performed by the said party of the first part, the said party of the second part agrees and by these presents bind themselves, their heirs and assigns to give immediate possession of said tannery building.

PERLEY D. MOORE & Co.

A. L. WRIGHT,
E. S. MEIGS, } Directors of the Swanton Tanning Co.
PERLEY D. MOORE,

" On August 1, 1879, the said contract was extended two years, to October 13, 1881. The said P. D. Moore took possession of the said tannery property and carried on the business until about October 1, 1882. There was no evidence that there was any express agreement to extend the contract beyond October 13, 1881, but the stockholders knew that the Moores were carrying on the business and made no objection.

On February 18, 1881, a meeting of the stockholders of the tannery company was held at its office, at which all the stockholders were present, and on motion of Perley D. Moore, it was voted to consolidate the Malone tannery, now owned by P. D. Moore & Co., with the Swanton Tanning Co., said Moore & Co. taking stock in the Swanton Tanning Co. for the amount of $15,000 in full for said Malone tannery with all the appurtenances thereunto belonging, including the real estate and all the tools and machinery now in said tannery."

The Swanton Tanning Co. took no further action in consolidating with the Malone tannery, which was in Malone, N. Y.

"On the 5th day of March, 1881, Perley D. Moore & Co. charged over to the Swanton Tanning Co. personal property at the Malone tannery to the amount of $12,518.25, consisting of hides tanned and untanned, and in the process of tanning, bark and other materials used in tanning leather, and other personal property used in connection with operating the Malone tannery."    *    *    *

"After the 5th day of March, 1881, said Malone tannery was operated by Perley D. Moore & Co. in connection with and as part of the business of the Swanton Tanning Co."    *    *

"At the request of the solicitor of the defendants, Wright and Hunter, I find that not less than $42,798.54, exclusive of interest and commission on purchases and sales were charged to the S. T. Co. by said P. D. Moore & Co., on account of the Malone tannery property and business as evidenced by defendant's Exhibit 1, which is a copy, so far as it goes, of orator's Exhibit 17 and 18, being the annual statements of January 1, 1881 and 1882, and of the books of Perley D. Moore & Co., and is in the handwriting of E. G. Moore."

It was found that the orators acted in good faith in this Malone transaction.

It appeared that eighty shares of the stock were issued to the Moores and Wright for 50 per cent of the par value thereof; and that they also became the owner of fifty-one other shares, which were originally issued to said Meigs. Meigs paid for the shares by conveying a woolen factory to the tanning company. The woolen factory was under mortgage, which was afterwards foreclosed. The Moores and Wright

redeemed, and so 51 shares of stock were issued to them, which cost them less than the par value.

The prayer in the bill was for an accounting; that the dividends paid should be refunded and the same applied in paying the orators; that an order of sequestration issue against all the property and assets; that there be an order of contribution among the stockholders; and for a decree of dissolution of said corporation. The other facts appear in the opinion.

*C. G. Austin*, for the defendants.

The orators predicate their right of recovery by virtue of the contract of October 13th, 1874, and do not claim by their bill any other account than that which accrued under that contract, and the prayer of the bill asks only for adjustment of that account.

The report finds that the sum of $6,391.81 of the orator's account accrued prior to the contract of October 13, 1874.

The actual capital stock paid in was only $21,000. The company could not, without violating the statute under which it was formed, contract a debt for only two-thirds of the amount of the capital stock *actually* paid in, viz.: $14,000. R. L. 3291; Acts of 1870, No. 6, s. 3. Eighty shares of the stock were conveyed to the orators and Wright for 50 per cent of their par value; and they received fifty-one of the Meigs shares on payment of $2,000—the mortgages on the woolen factory. So the actual amount paid in for the stock was $19,500. Two-thirds of this would be $13,000, and this would be the limit of indebtedness which this private corporation might properly incur. Act of 1870, s. 3; *Booth* v. *Woodbury*, 32 Conn. 113; *Alley* v. *Edgecomb*, 53 Me. 446; 8 Ind. 34; 30 Ala. 461; *Leavenworth* v. *Morton*, 1 Kan. 431; 3 McLean, 111·

The indebtedness created on account of the Malone tannery is absolutely void. The orators had no right by virtue of the contract, nor by the articles of association or charter of the company to transfer the business of the company to the state

of New York. The exercise of powers not conferred is equally illegal with the exercise of a prohibited power. Green Bri. *Ultra Vires;* 37 Cal. 543; *Vandall* v. *San Francisco Dock Co.* 40 Cal. 83; *Downing* v. *Mt. Washington Road Co.* 40 N. H. 230; *Bank of Augusta* v. *Earle,* 13 Pet. 519; *Orr* v. *Lacy,* 2 Dougl. 230. The vote of February 18, 1881, conferred no new powers. Rev. Laws, s. 3289; Mor. Corp. s. 940; *State* v. *Bailey,* 16 Ind. 46. The orators stand charged with notice, in fact and law. P. D. Moore was a director and president and it was his duty to protect the company against these wrongs.

*R. O. Sturtevant* and *H. C. Adams,* for the orators.

The vote of February 18, 1881, was valid and binding; it was a contract. *Fleckner* v. *Bank of United States,* 8 Wheat. 338, 353. It was not a contract *ultra vires.* It was an open, square business transaction. It was not outside the business in which the Swanton Tanning Co. were engaged. The property was delivered to the company, and accrued to its benefit. The articles of association disclose the nature of the company's business; but the details are not supposed to be embraced in them.

If the purchase of the Malone tannery property had been foreign to the business carried on by said Swanton Tanning Co. the doctrine of *ultra vires,* in one sense, might with some propriety be urged. But the purchase in fact included nothing but hides, tanned and untanned, tanning material, some tools, machinery and other personal property essential in carrying on the business. Brice, *Ultra Vires,* p. 39; 97 U. S. 659; *Bank* v. *P. M. R. R. Co.* 31 Vt. 491.

The doctrine of *ultra vires,* when invoked for or against a corporation, should not be allowed to prevail when it would defeat the ends of justice or work a legal wrong.

There was no error in view of the facts in including in the decree the prior account. *Lewis* v. *The St. Albans Iron & S. Works,* 50 Vt. 477.

The opinion of the court was delivered by

TAFT, J. No claim is now made by the orators as to matters embraced within the prayer of the bill, except such as relate to the accounts between the parties, and enforcing the collection of any sum found due them from the defendants.

Was there error in the decree?

I. The main portion of the account passed upon by the master accrued between the thirteenth day of October, 1874, and the cessation of the tanning company's business in 1882, under the written contract of the former date. Prior to the execution of the written contract, an account had accrued in favor of the orators amounting at the time of the contract to six thousand three hundred ninety-one 81-100 dollars. The account accrued just prior to the execution of the contract, and the character of the business done under the contract was evidently the same as that embraced in the prior account. It was in fact a continuation of the business begun soon after the formation of the company. The prior account was carried forward into the statements made to the defendant, was never objected to by them, was treated by them as a part of the account rendered under the written contract; and we think that after being so treated, it is too late for the defendant to now object to an allowance of it under a bill brought for an accounting under the contract. That account became a part of the account under the contract. Under the circumstances, we should not hesitate to permit an amendment of the bill to include the prior account did we deem it necessary, which we do not.

II. The only other question made by the defendant is denying the orators' right to charge the company with the personal property at the Malone tannery, amounting to 12,518 25-100 dollars, on the 18th day of February, 1881. We do not think that the right to charge the tanning company this sum depends strictly upon the legality of the vote of the tanning company at the latter date to consolidate its business with that of the Malone tannery. That vote was not carried out by the ora-

tors taking stock in the company, or by a conveyance of the real estate to the company. Such purchase of real property in another state may, or may not, have been regular and strictly within the corporate powers of the company. But the acquisition of the personal property at the Malone Tannery was strictly within the authority of the orators under the contract of 13th October, 1874. They made all the purchases for the tannery, and we think that having taken the personal property under the form of a sale, the company having had the full benefit of it in every respect, that the orators should be allowed its value. The personal property at the Malone tannery was appraised by an agent of the orators and charged at the appraisal. The orators could not bind the company by an appraisal of their own. We wish to exclude the idea that this is impliedly sanctioned by the disposition of the case. We presume that the master allowed the actual cash value of the property; and no question is raised by the report in respect to the value of the property. We presume the action of the master was based upon legitimate evidence in that respect.

Decree affirmed, and cause remanded.