F. P. Stanley v. M. H. Rhodes, Inc.

Inglis, C. J., Baldwin, O'Sullivan, Quinlan and Wynne, Js.

Argued October 15—decided December 22, 1953—reargued
February 4—amended opinion filed February 11, 1954

*Bernard A. Kosicki* and *Atwood Collins II,* for the
appellant (defendant).

*Hugh M. Alcorn, Jr.* and *John P. Hodgson,* with whom, on the brief, was *R. Graeme Smith,* for the appellee (plaintiff).

WYNNE, J. The plaintiff brought this action against the defendant in January, 1948. He was seeking payment for services he claimed to have rendered to the defendant during the period from September 18, 1938, to February 17, 1947. The services were described in general terms as those of agent for and distributor and salesman of parking meters in several named communities in Connecticut. He alleged that he believed there was due him a sum in excess of $58,750 and that he had asked for an accounting, which the defendant had refused. The defendant in May, 1948, filed an answer denying everything the plaintiff had alleged. The sweeping nature of what the plaintiff then claimed was in no way affected by the brevity of his statement nor by the equally brief, but no less comprehensive, denial. Here the parties were at issue.

In January, 1950, new counsel for the defendant sought permission to withdraw the answer on file and thereafter sought permission to amend the answer in order to allege that there had been a full accounting and to plead the Statute of Limitations. Both these motions were denied. Shortly thereafter, by stipulation, an interlocutory judgment for an accounting was entered. Then by stipulation the case was referred to a state referee for an accounting. The referee's report was filed in April, 1951. It was the culmination of hearings that had occupied twenty-eight days. Arguments and briefs terminated the proceedings before the referee and he filed a voluminous, painstaking and detailed report. The hearings produced about 4000 pages of transcript. There

were 183 exhibits. A remonstrance to the report was filed. In June, 1952, the report was accepted, and judgment followed.

The defendant has assigned many errors. First and foremost is the question whether the court erred in refusing to permit the defendant to amend its answer. Our policy in this regard is liberal, but in any case it involves the discretion of the court passing upon the motion. *Benson* v. *Morey,* 129 Conn. 390, 391, 28 A.2d 843. Amendments should be made seasonably. *Mazziotti* v. *DiMartino,* 103 Conn. 491, 492, 130 A. 844; *Evans* v. *Byrolly Transportation Co.,* 124 Conn. 10, 13, 197 A. 758. More than a year and a half had elapsed in this case from the joining of issue to the time when the motion was made for permission to amend. The case was on the assignment list awaiting trial. The denial was predicated solely on the ground that to grant it would cause delay. The case relied upon by the defendant, *Cook* v. *Lawlor,* 139 Conn. 68, 71, 90 A.2d 164, holds that the court may use its discretion. The court may in its discretion restrain the amendment of pleadings so far as may be necessary to prevent an unreasonable delay of the trial. General Statutes § 7852.

The defendant claims that there was a fatal variance between the allegations of the complaint and the plaintiff's proof. This claim rests upon the proposition that the plaintiff alleged, in effect, that as a salesman and distributor for the defendant he sold numerous parking meters in certain cities specified in the pleadings and that the defendant collected large sums of money in payment therefor. The defendant argues that the plaintiff in fact relied upon an oral agreement, made on or about July 25, 1940, that he was to serve the defendant as its distributor for Connecticut, that this territory would be ex-

clusively his, that he would receive 40 per cent net on all sales of the defendant's meters in the territory, including resales and sales on repeat orders, and that he was to bear his own personal expenses but no other expenses in connection with the sales.

The complaint basically states a cause of action for an accounting. A judgment had been rendered for an accounting. The accountant in behalf of the plaintiff was given access to the defendant's books and related papers. He examined these and reported to the plaintiff. The defendant's comptroller prepared a full and accurate copy of the plaintiff's account as it stood on the defendant's books. This and supporting vouchers were made available to the plaintiff. The account was admitted in evidence. To sustain his burden of proof as to the amount he claimed to be due, the plaintiff cross-examined the defendant's comptroller and offered affirmative testimony by his own witnesses.

The relationship of the parties was one that partook of the nature of an agency covering a period from September, 1938, to February, 1947. During this time the parties had proceeded in part by virtue of three different written contracts as well as by oral agreement. "In such an action . . . the transactions between the parties with reference to the particular matter alleged as a basis of the accounting may require for its proper determination an inquiry into matters not alleged where the two are so interwoven that a full accounting must take them into consideration. *Butler* v. *Cornwall Iron Co.*, 22 Conn. [335], 359; *Lapenta* v. *Lettieri*, 72 Conn. 377, 385, 44 Atl. 730; *Moore* v. *Tanning Co.*, 60 Vt. 459, 465, 15 Atl. 114." *Spitz* v. *Abrams*, 128 Conn. 121, 123, 20 A.2d 616. The relationship between the parties was one which covered a long period of time and a large

number of separate transactions, all of which were carried out in connection with several different agreements, both written and oral. To arrive at a complete and just determination of the amount due from the defendant to the plaintiff, it was necessary that the court inquire into matters that were not specifically alleged but which were so interwoven that a full and complete accounting would require them to be taken into consideration. The nature of the subject matter in dispute and the manner in which the parties proceeded to resolve the issues made a strict adherence to the allegations of the complaint not only impossible but in fact obstructive to a fair and just determination of the cause. The judgment for an accounting opened the door to an inquiry into the facts and circumstances as wide as might be necessary to determine the sum due by reason of the agency upon the existence of which that judgment was predicated. The claim of fatal variance is without merit.

Closely allied to its claim of variance is the defendant's contention that it was not competent for the referee to find that there was a contract between the parties under which the plaintiff had an exclusive agency, because it is not within the scope of an auditor's function to pass upon such a question. The point was not made in the remonstrance. In its brief the defendant argued that for two reasons it was not competent for the referee to find that the contracts between the parties gave the plaintiff an exclusive agency. The first reason given was the one just discussed—that, since the complaint in the present action did not allege an exclusive agency, the plaintiff's evidence of the agency created a fatal variance. The second reason was that in this proceeding the referee was acting as an auditor and it

is not the function of an auditor to interpret the contract out of which the necessity for an accounting arises. In the remonstrance the defendant did make the claim that it was improper for the referee to find that the contract gave the plaintiff an exclusive agency because that finding was at variance with the complaint. This claim we have discussed at length. Nowhere in the remonstrance, however, is the claim made that the referee was precluded from finding the terms of the contract merely because he was acting as an auditor as distinguished from a referee. The claim not having been made in the trial court, it requires no discussion here. Practice Book § 409.

Until July 25, 1940, the parties had proceeded under written agreements. The third one of them was cancelled as of that date. From that time on, the parties conducted their affairs under the oral agreement hereinbefore alluded to. The defendant claims that this oral agreement violated the Statute of Frauds. It relies upon the case of *Burkle* v. *Superflow Mfg. Co.,* 137 Conn. 488, 78 A.2d 698. That case is not an authority controlling the instant case. Here the plaintiff has procured orders and the defendant has filled them. The plaintiff has fully performed his services. Full performance by one party to a contract takes it out of the statute. *Strang* v. *Witkowski,* 138 Conn. 94, 99, 82 A.2d 624. It is too late for the defendant to rely upon it as a defense.

The remaining assignments of error offer nothing material. There is complaint regarding many of the rulings of the referee. These questioned rulings are divided by the defendant in its brief into twenty-one sections, each one of those sections, for the most part, containing several rulings. It is obviously impossible without unduly prolonging this opinion to

discuss all of the rulings. Some of them, however, do call for brief mention.

The referee excluded several written statements of account purported to have been rendered by the defendant to the plaintiff. These statements bore upon their face what purported to be a written acknowledgment by the plaintiff that they were correct. They were offered in the first instance as proof of the fact that there had been a partial accounting between the parties. For that purpose they were clearly inadmissible, because the interlocutory judgment had already ordered a full accounting between the parties. If they had been admissible at all, it would have been as admissions against interest. It does not appear that anything set forth in them was, in reality, seriously against the interests of the plaintiff and at most, therefore, their exclusion was harmless error.

The defendant offered evidence through several witnesses to the effect that meters sold to Derby and New Britain were of a type different from that exhibited by the plaintiff. Inasmuch as the plaintiff did not claim that the Derby and New Britain sales had been actually made by him, but rather rested his claim for a commission on those sales on his exclusive agency contract, the proffered evidence was irrelevant and properly excluded. None of the other assignments of error directed at rulings on evidence have merit.

The defendant also claims that the referee, after finding in one paragraph of his report that the plaintiff was entitled to credits totaling $143.79, in the very next paragraph found that he was not entitled to them, but nevertheless included them in the summary, in a later paragraph, of all credits due the plaintiff. From that the defendant argues that the

plaintiff received in the accounting an amount ($143.79) to which he was not entitled. This contention does not appear to have been clearly stated in the remonstrance. Besides, the fact that the referee once found that these credits were due and also included them in the total is sufficient support for their allowance.

A further claim of the defendant is that the referee's finding of the amount due the plaintiff on account of sales made in Waterbury was not supported by the evidence. Specifically, the defendant's contention in this regard is that the referee refused to allow it credit for a payment of $1000 made by check dated January 27, 1941. It was clear from the evidence that the plaintiff had received and cashed the check. It was not clear whether the payment had been made on account of commissions due the plaintiff or whether, on the contrary, the payment was on account of expenses incurred by the plaintiff which, under the arrangement between the parties, the defendant was bound to pay. The record does not support the defendant's contention that the plaintiff judicially admitted that the payment was on account of commissions. Inasmuch as the burden was upon the defendant to prove that the payment was on account of commissions rather than expenses, we cannot say that the referee was unwarranted in refusing to find that the defendant was entitled to credit for it.

There is no error.

In this opinion the other judges concurred.