ELSWORTH JOHNSON *v.* JOSEPH A. TOSCANO ET AL.

WYNNE, C. J., BALDWIN, DALY, KING and MURPHY, Js.

584

Argued October 8—decided November 5, 1957

*Bertrand Quinto,* with whom were *A. Arthur Giddon* and, on the brief, *Morton E. Cole, Cyril Cole* and *Jacob H. Channin,* for the appellant (plaintiff).

*Valentine J. Sacco,* with whom was *Jerome I. Walsh,* for the appellees (defendants).

BALDWIN, J. The plaintiff had a verdict for $3000 which he moved to set aside as inadequate. The court denied the motion. He has appealed from the judgment, alleging error in the court's refusal to permit the filing of a substitute complaint, in rulings on the admission of evidence, in the refusal to charge as requested, and in the denial of the motion to set aside the verdict.

The defendants admitted liability and the case was tried upon the issue of damages. The plaintiff offered evidence from which he claimed to have proved the following: In the nighttime of December 4, 1946, he was standing near his automobile,

which was parked on Porter Street in Manchester. An automobile owned by the defendants, Joseph A. and Emma Toscano, while being driven by Joseph, ran into the plaintiff and his car. The plaintiff tried to avoid being injured by jumping upon the fender and hood of his car, but he was struck in the leg and fell to the ground. He immediately felt a sharp pain in his lower back and right groin. He sustained contusions to his right leg, a lumbosacral sprain and a traumatic hernia. He did not consult a doctor until approximately a week after the accident. While under the care of this physician, Dr. G. R. Miller, Dr. D. M. Caldwell performed surgery on a right inguinal hernia. The plaintiff received a permanent injury to his lower back. He was employed as a grinder at Pratt and Whitney Aircraft, and he was incapacitated for work for thirteen and one-half weeks. When he returned to work he had, and still has, difficulty and needs help to do his job. He has been giving himself treatment at home, but the pain and discomfort in his back continue. He is physically unable to engage in sports as he did before the accident. In April, 1955, Dr. S. J. Silbermann, a neurosurgeon, examined the plaintiff at the request of the latter's counsel. Pursuant to an order of court, the plaintiff was examined in behalf of the defendants on April 15, 1955, by Dr. W. B. Scoville, a neurosurgeon.

The defendants offered no evidence but claimed the following facts from the evidence produced by the plaintiff. The plaintiff was uncertain whether any injury was caused him by an actual touching by the defendants' car. He remained at the scene of the accident for half an hour and did not call a doctor to treat his injuries. The next day he went to work and continued at work each working day thereafter

until December 12, when he consulted Dr. Miller. The doctor saw the plaintiff on December 12, 14, 20, 27, and 30, 1946, and on January 6, 7, 9, and 18 and March 27, 1947. He noticed a hernia in the plaintiff's right groin on December 20. In January he referred the plaintiff to Dr. Caldwell, a surgeon, who reduced the hernia by operative procedure on January 22 and discharged the plaintiff as cured on February 14, 1947. Dr. Miller also diagnosed a moderately severe lumbosacral back strain. The plaintiff's back was strapped for a short period of time, but a brace was not required. Dr Miller told the plaintiff on his final visit on March 27, 1947, that if symptoms persisted he was to return for further treatment. He did not return. When he went back to work in March, he had removed the strapping on his back and has worn none since. He made no complaint of any injuries at the scene of the accident. His absence from work for thirteen and one-half weeks was due primarily to the hernia and his convalescence from the operation. From March 27, 1947, until April 20, 1955, the plaintiff did not seek any medical advice or treatment for any back injury. He worked steadily, and his earnings increased each year with the exception of a period when work time was reduced by his employer. The records of medical examinations of the plaintiff at his place of employment on March 24, 1947, October 21, 1949, January 13, 1950, April 22, 1952, and October 26, 1954, contain notations indicating that he made no complaints about his back. In 1953 he purchased a twenty-eight-foot cabin cruiser which he maintains and operates.

At a pretrial hearing on December 3, 1953, the plaintiff failed to offer any amendment to the complaint alleging injuries in addition to those stated in

the original complaint. On April 20, 1955, when the case was on the assignment list for trial, counsel for the plaintiff sent him to Dr. Silbermann for the sole purpose of qualifying the doctor to testify as an expert medical witness for the plaintiff at the trial. Dr. Silbermann did not examine the x-rays, hospital records or medical reports pertaining to the plaintiff's injuries or his operation, nor did he consult with Dr. Miller or Dr. Caldwell, who had treated the plaintiff in 1946 and 1947. On October 10, 1955, the plaintiff filed a motion for permission to file a substitute complaint amending the original complaint by alleging additional back injuries and increasing the ad damnum from $12,000 to $35,000. The court denied the motion on October 14, 1955. The plaintiff renewed his motion at the trial, which began on February 23, 1956, and it was denied again.

We shall first consider the errors assigned in the denials of the plaintiff's motions for permission to file a substitute complaint. The plaintiff made no attempt to amend his pleadings prior to the pretrial hearing on December 3, 1953, nor did he thereafter until October 10, 1955. The substitute complaint then offered was apparently inspired by the report of the physical examination made by Dr. Silbermann on April 20, 1955, in preparation for his testimony as an expert witness in the pending trial. Our courts have pursued a liberal policy in allowing amendments. General Statutes § 7852; Practice Book § 92; *Stanley* v. *M. H. Rhodes, Inc.,* 140 Conn. 689, 692, 103 A.2d 143. The statute and the rule call for the exercise of the court's discretion, and the refusal to allow an amendment must rest upon some sound reason. The present action was begun by process returnable to the court in September, 1947. The pleadings were closed on October 10 of that

year. A pretrial hearing was held on December 3, 1953, pursuant to § 144 of the Practice Book. This section as it then read is set forth in full in the footnote.[1] See *Stanley* v. *Hartford,* 140 Conn. 643, 645, 103 A.2d 147. The delay in reaching this stage of the proceedings cannot be attributed entirely to congestion in the court docket. The court could fairly assign a substantial portion of it to the failure of the plaintiff's counsel, upon whom the primary obligation to press for a disposition of his client's claim rested, to expedite the proceedings. Nevertheless, no amendment to the pleadings was offered or suggested at the pretrial hearing, when, under the spirit of the rule, counsel should be prepared to state in good faith that his case is in all respects ready for immediate trial. Any amendment of the pleadings, if needed or desired, should be suggested. If a motion is not formally made at the pretrial hearing, permission to amend should be sought promptly in accordance with proper procedure and, if the per-

---

[1] "[Practice Book] Sec. 144. PRETRIAL PROCEDURE. The chief justice may, when the condition of business requires, designate one or more of the judges of the superior court to hold court in any county, and to examine the files of civil cases pending on the trial list, establish a pretrial list of such cases, and request parties or direct their attorneys to attend a call of said list, at which call continuances, nonsuits, or defaults may be entered, and also the following matters may be considered:

"(1) Simplification of the issues;

"(2) Amendments to pleadings;

"(3) Stipulations of parties, admissions of fact, and of documents which will avoid unnecessary proof;

"(4) The limitation of number of expert witnesses;

"(5) Possibility of settlement;

"(6) Such other matters as may aid in the disposition of the action.

"Upon consideration of the above matters, the court may make any appropriate order and such order when entered shall control the subsequent conduct of the case unless modified at the trial to prevent manifest injustice."

mission is granted, the amendment itself should thereafter be filed punctually. Practice Book § 92; *Motiejaitis* v. *Johnson,* 117 Conn. 631, 638, 169 A. 606. The preparation for pretrial should include an up-to-date medical appraisal of the plaintiff's injuries and the extent of his recovery. *Stanley* v. *Hartford,* supra, 648. It was, however, not until April 20, 1955, more than a year later, that the plaintiff was sent by his counsel to Dr. Silbermann, not for treatment, but to prepare Dr. Silbermann to testify as an expert at the pending trial. Thereafter, the plaintiff delayed any effort to amend his complaint for a further period of six months. By the time permission to amend was sought and the proposed substitute complaint was filed, eight years had elapsed since the case was returned to court. The court had reasonable cause under all the circumstances to question the good faith of the plaintiff in making his motion to file a substitute complaint, and sound reason to deny it in order to prevent any further delay. *Rusch* v. *Cox,* 130 Conn. 26, 32, 31 A.2d 457. The subsequent denial of the motion at the time of the trial was a fortiori proper.

We shall next consider errors assigned in rulings on evidence. The plaintiff claimed at the trial that as a result of the accident he suffered from a traumatic arthritis in his right lumbosacral joint. Dr. Silbermann, the plaintiff's medical expert, testified on the basis of his examination on April 20, 1955, that an old pathological process was going on in this joint. He was asked on direct examination what that process was. The defendants objected and the court excused the jury. In the jury's absence, the witness testified that the process was a traumatic reproduced arthritis. The defendants objected further, and the court ruled that the testimony was not

admissible. The ruling was correct. The complaint returned to court in September, 1947, contained no allegation which put the defendants upon sufficient notice that the plaintiff would claim such an injury. *Varley* v. *Motyl,* 139 Conn. 128, 134, 90 A.2d 869. The defendants were not at fault. A timely motion for a more specific statement would not have disclosed the claim, nor would it have been disclosed by any such motion made at any time between September, 1947, and April 20, 1955, when Dr. Silbermann made his examination, because the plaintiff does not purport to have discovered this particular injury before that examination. The court, for reasons already discussed, had refused to allow an amendment to the complaint. Therefore, evidence concerning this injury was not admissible under the pleadings.

Following this ruling, the plaintiff propounded a hypothetical question in an attempt to prove a causal relation between the accident and the arthritic condition claimed to have been disclosed by Dr. Silbermann's examination. The court excluded it. The court's ruling was correct because as in the ruling just considered, the plaintiff was seeking to adduce testimony concerning an injury not within the scope of the allegations of the complaint. Furthermore, the question sought to elicit an expert opinion based solely upon a medical examination and report made by a physician more than eight years after the accident without consulting the doctors who had treated the plaintiff or the x-rays, hospital records or medical reports made by them. The question ignored completely the plaintiff's continuous work record, his other physical activities and his failure to make any complaint whatsoever during a series of physical examinations at his place of employment or to

obtain medical treatment as had been suggested to him, if his symptoms persisted, by Dr. Miller on the plaintiff's last visit to that physician in March, 1947. It is true, as the plaintiff claims, that a hypothetical question need not contain all the evidence relating to the issue upon which the opinion is sought. *Jackson* v. *Waller,* 126 Conn. 294, 306, 10 A.2d 763, and cases cited. At the same time, the question "should contain such assumptions of facts and such only as counsel may fairly claim that the evidence in the case tends to justify, and . . . while such a question may not be improper because it includes only a part of the facts in evidence, it would be so if by reason of omission it manifestly failed to present the facts which it did include in their just and true relation, and caused them to appear in one that was untrue and unjust." *Barber's Appeal,* 63 Conn. 393, 409, 27 A. 973. It is the province of the trial court to rule out as improper a hypothetical question which, by including some facts and excluding others, or by presenting facts in an unfair and unjust relationship, would elicit, at best, a speculative opinion of doubtful value or which is intended or is fairly likely to mislead the jury. 2 Wigmore, Evidence (3d Ed.) pp. 808, 809 (citing *Barber's Appeal,* supra); 58 Am. Jur. 481 § 852, 483 § 854. Independently of any other grounds, the hypothetical question in the case at bar was inadmissible because it attempted to elicit an opinion of the doctor based in part on narrative statements of the plaintiff not made for the purpose of obtaining treatment but solely to enable the doctor to testify, in violation of the rule laid down in *Wilson* v. *Granby,* 47 Conn. 59, 76; *Martin* v. *Sherwood,* 74 Conn. 475, 482, 51 A. 526; and *Gilmore* v. *American Tube & Stamping Co.,* 79 Conn. 498, 504, 66 A. 4.

The plaintiff claims error in the refusal of the court to admit testimony of Dr. Silbermann concerning the need for and the cost of a future operation to fuse sections of the plaintiff's spine to correct the claimed condition in his back. The plaintiff conceded that this testimony pertained to the arthritic condition alleged in the substitute complaint. Since the court had refused to allow the filing of this pleading, it could furnish no basis for the testimony. The plaintiff also claimed that the testimony was within the allegations of the original complaint which stated that he had "incurred and will incur expenses for hospitalization, medical and surgical care and attention, medicines, X rays, etc." The reason for the court's ruling goes deeper than the question whether this allegation put the defendants upon notice of such a claim. There was no evidence in the case that the injury by reason of which the claimed future expenses would be incurred was caused by the accident of December 4, 1946. The purpose of the hypothetical question which the court excluded was to establish that causal relation. Under the allegation pertaining to damages, the plaintiff could recover only those which resulted, or might in the future result, from injuries causally connected with the mishap which was the basis of his suit. The necessary causal connection had not been established by medical testimony and could not be left to surmise and conjecture by the jury. *Bates* v. *Carroll,* 99 Conn. 677, 679, 122 A. 562; *Boland* v. *Vanderbilt,* 140 Conn. 520, 525, 102 A.2d 362. The court's ruling was correct.

During the direct examination of Dr. Silbermann, the plaintiff offered in evidence a so-called Froshe medical chart which depicted the nervous system of the human body. Upon objection the court excluded

it. The ruling was within the discretion of the court, and that discretion does not appear to have been abused. *Gillette* v. *Schroeder,* 133 Conn. 682, 684, 54 A.2d 498.

The plaintiff assigns error in the refusal of the court to charge, as requested, that the failure of the defendants to call Dr. Scoville, who had examined the plaintiff in the defendants' behalf, created an inference that Dr. Scoville's testimony would be unfavorable to the defendants and that the jury might "consider said inference in reaching [their] conclusions." This claim is without merit. The defendants called no witnesses but rested their case on the evidence adduced by the plaintiff. Under these circumstances, the rule which the plaintiff invoked by his request does not apply. *Baker* v. *Paradiso,* 117 Conn. 539, 546, 169 A. 272; *Middletown Trust Co.* v. *Bregman,* 118 Conn. 651, 658, 174 A. 67; *Seney* v. *Trowbridge,* 127 Conn. 284, 288, 16 A.2d 573.

The jury returned a plaintiff's verdict for $3000. Error is claimed in the denial of the plaintiff's motion to set it aside as inadequate. The evidence disclosed medical and hospital expenses of $323.40 and loss of wages in an amount between $900 and $1200, depending upon whether the jury figured the loss of wages for the thirteen and one-half weeks during which the plaintiff was out of work on a weekly basis or an hourly basis. It is unnecessary again to set forth the details of the injuries claimed. We examine the evidence for the purpose of reviewing the court's ruling upon the motion to set aside the verdict. The evidence supports the finding as to the claims of proof made with respect to the injuries. It therefore becomes unnecessary for the purpose of this part of the opinion to restate those claims. The jury reasonably could have found that

the hernia from which the plaintiff made a complete recovery was substantially proven, but they also could have found, under the circumstances of the case, that the plaintiff's other injuries were greatly exaggerated. The verdict is not one that "so shocks the sense of justice as to compel a conclusion that the jury were swayed by partiality, prejudice, corruption or mistake," and it must stand. *Pierce* v. *Albanese,* 144 Conn. 241, 263, 129 A.2d 606.

There is no error.

In this opinion the other judges concurred.