CHARLES DuBOSE *v.* JOSEPH F. CARABETTA ET AL.

HOUSE, THIM, RYAN, SHAPIRO and LOISELLE, Js.

Argued April 13—decided June 3, 1971

*William J. Egan,* with whom, on the brief, was *S. Robert Jelley,* for the appellants (defendants).

*Paul W. Orth,* for the appellee (plaintiff).

RYAN, J. The plaintiff, an architect licensed to practice architecture in Connecticut, brought this action to recover a fee alleged to be due under a contract wherein the plaintiff agreed to provide architectural services for the construction of an apartment building on land situated in the city of Meriden. The defendants are Joseph F. Carabetta, Meadow Haven, Inc., Carabetta Enterprises, Inc., and Victoria Towers, Inc., all of Meriden. Joseph F. Carabetta, the individual defendant, is a principal and officer of each of the three defendant corporations and each defendant is engaged in the building business. During the course of the trial, the parties stipulated that any judgment rendered against any one defendant should be against all defendants. The referee rendered judgment for the plaintiff to recover of the defendants the sum of $57,378.65, together with interest in the sum of $9324, making a total of $66,702.65. The defendants have appealed to this court.

The defendants assign error in the finding of subordinate facts. They concede that there was evidence to support these findings but urge that some of them were made without the benefit of evidence which the defendant sought to introduce, which was excluded by the referee. The ruling in question will

be discussed later in this opinion. The court found the following facts: In April, 1966, the defendants contacted the plaintiff with a view toward commissioning him to design an apartment building which the defendants were planning to erect in Meriden. On or about May 4, 1966, the plaintiff contracted with the defendants to design an apartment building which would meet the limitations or qualifications of the Federal Housing Administration, hereinafter referred to as F.H.A. The defendants agreed to pay the plaintiff a fee for these services which would not exceed the maximum permitted by the F.H.A. The plaintiff fully performed his contract with the defendants and is entitled to compensation as controlled by the F.H.A. computation of December 28, 1966, amounting to $56,460, plus $918.65 for expenses, making a total of $57,378.65. On or about December 12, 1966, the plaintiff submitted what he regarded as substantially final plans and specifications to the defendants, but he made certain modifications thereafter. The final drawings and specifications were reviewed by the F.H.A. and certain small modifications were made. The plaintiff's plans called for a building made of reinforced concrete. The plans were excellent and would have produced a fine building. The plaintiff gave no guarantee of the cost per square foot of the building. After the plans were delivered, the defendants sought to reduce the cost of the building without conferring with the plaintiff. The defendants, without the knowledge of the plaintiff, engaged Thurston Klayton, an engineer, who was authorized by the defendants to change the plaintiff's plans to steel construction instead of concrete. The plaintiff could have made such changes if requested to do so but the defendants did not ask this of him. After Klayton changed the

plaintiff's plans by substituting steel for concrete, the defendant and Klayton met with the plaintiff and advised him of what had happened. The plaintiff was willing to cooperate and change the plans on the condition that he be guaranteed compensation for the plans he had already drawn and delivered, but the defendants were not willing to pay the plaintiff for the services he had rendered. The plans drawn by Klayton were an exact copy of the plaintiff's plans. The only changes made by Klayton were those necessitated by the change from concrete to steel. In all other respects the plans were identical. Engaging Klayton without first consulting the plaintiff was an improper act by the defendants and a professionally unethical act by Klayton. After the plaintiff was informed that Klayton had redesigned the structure in steel rather than reinforced concrete, the plaintiff was willing to revise his plans at no additional charge to go along with the steel design. It is not customary for an architect to guarantee the cost of the building for which he has drawn plans. The defendants engaged Klayton without the knowledge of the plaintiff and did not discuss with the plaintiff the advisability of changing from concrete to steel. The plaintiff was not informed of the proposed change until after Klayton was engaged and had already redrafted the plaintiff's plans by substituting steel for concrete.

On these subordinate facts the referee concluded that the plaintiff contracted with the defendants to design an apartment building which would meet the limitations of qualifications of the F.H.A.; that the defendants agreed to pay the plaintiff a fee for these services which would not exceed the maximum permitted by the F.H.A.; that the plaintiff fully performed his contract with the defendants

and is entitled to compensation; and that the amount due him under the contract is controlled by the F.H.A. computation of December 28, 1966, amounting to $56,460 plus $918.65 for expenses, or a total of $57,378.65.

The defendants assign error in a ruling by the referee excluding certain evidence. The case was tried on six days over a period of three months from September 15, 1969, to December 19, 1969. On the second day of the trial the plaintiff testified during cross-examination that he felt sure that the wind and floor loads in his plans complied with the applicable F.H.A. code because he had confidence in his structural engineer who prepared the calculations and computations. Later on that day during the cross-examination of Peter Verkon, the chief architect in the Hartford office of the F.H.A., a witness called by the plaintiff, the defendants offered in evidence the minimum standards of the F.H.A. with respect to wind and floor loads applicable to apartment buildings. The plaintiff objected to the evidence on the ground that up to that point the defendants had given no indication that the plans were defective. The plaintiff called the referee's attention to the fact that in response to the plaintiff's motion for disclosure the defendants' compliance therewith on December 10, 1968, had specified three objections to the plaintiff's plans—"incomplete, unsuitable, and late"—and had given no indication of any claim that the plans were defective. In so doing the plaintiff acted in accordance with the procedure suggested in *Hirsch* v. *Thrall*, 148 Conn. 202, 207, 169 A.2d 271. The defendants claimed that the exhibit would be a foundation to show that the plaintiff's plans were not suitable in connection with floor and wind loads. The referee referred to the pleadings which

showed a general denial of the plaintiff's performance of the contract and the absence of any special defense. He then ruled that any defect, impropriety or unsuitability in the work must be specially pleaded and that the evidence was inadmissible. On the third day of the trial the defendants sought permission of the referee to amend their answer to add the following special defense: "The architectural services rendered by the plaintiff did not comply with the basic design criteria for live load and wind load according to FHA standards. Said design criteria is [sic] set forth in plaintiff's Exhibit C." Exhibit C consists of the plans drawn by the plaintiff. The referee indicated that he was not inclined to permit the amendment and suggested that the defendants proceed without the amendment up to a point where they needed it and then offer it again. On the sixth and last day of the trial the amendment was again offered, at which time the plaintiff's objection to it was sustained and the defendants duly excepted to the ruling.

The defendants claim that the architectural services rendered by the plaintiff did not comply with the basic design criteria for live and wind loads according to the F.H.A. standards, and that such evidence was admissible under a general denial. Practice Book § 120 provides: "No facts may be proved under either a general or special denial except such as show that the plaintiff's statements of fact are untrue. Facts which are consistent with such statements but show, notwithstanding, that he has no cause of action, must be specially alleged. Thus, accord and satisfaction, arbitration and award, coverture, duress, fraud, illegality not apparent on the face of the pleadings, infancy, that the defendant was non compos mentis, payment (even

though nonpayment is alleged by the plaintiff), release, the statute of limitations and res adjudicata must be specially pleaded, while advantage may be taken, under a simple denial, of such matters as the statute of frauds, or title in a third person to what the plaintiff sues upon or alleges to be his own." The defendants urge that nonperformance is not specifically listed in this section and is, therefore, not embraced within the rule. The inherent difficulty in drawing the line between what can be shown under a general denial and what must be specially pleaded is recognized by 1 Stephenson, Conn. Civ. Proc. (2d Ed.) § 126 (g). "The rules specify certain matters which must be specially pleaded and the annotations provide further aid [Practice Book § 120 and annotation]. The pleader must be as familiar with the scope of denials of today as his grandfather was with the scope of the 'general issue' at common law. The problem is not one peculiar to Connecticut procedure but exists even under procedures which have deliberately reduced the significance of pleading. [Cf. rule 8 (c) of the Federal Rules of Civil Procedure.]"

The referee indicated by his ruling that where the plaintiff alleges performance of a building contract, if the defendant claims there was a failure to perform in any particular, it is a fundamental rule of pleading that the defendant must affirmatively specify that particular in his answer. In *Dean* v. *Connecticut Tobacco Corporation,* 88 Conn. 619, 623, 92 A. 408, the defendant complained of the refusal of the trial court to comply with its request to instruct the jury that, by reason of the provision in the specifications that the contractor was to carry on his work with reasonable rapidity consistent with thorough workmanship and to the complete satis-

faction of the owner, the plaintiff could recover nothing because the work was not done to the satisfaction of the owner. This court said (p. 623): "Even if it be assumed that this language of the specifications concerning the satisfaction of the owner refers to the character of the completed work as well as to its progress, the defendant was not entitled to the instruction requested. It had not pleaded dissatisfaction, and it was incumbent upon it to do so, if it desired to rely upon that defense. Its denial of the plaintiffs' general allegation of performance, save in the particulars where there had been changes at the defendant's request, was not sufficient." The defendants urged that the *Dean* case has application only to those conditions or provisions of a contract the fulfillment of which exists within the subjective control of the defendants and that this court overruled the *Dean* case sub silentio in *Krawitz* v. *Ganzke,* 114 Conn. 662, 159 A. 897. We do not agree with either of these contentions. The holding of the *Dean* case is clear and is applicable to the present case. The *Krawitz* case did not involve a building contract and is inapposite. The *Dean* case has never been overruled. See, for example, *Vece* v. *Medical Center, Inc.,* 149 Conn. 518, 519, 182 A.2d 407, where in an action for architectural services the defendant filed a special defense alleging, inter alia, that the plaintiff's services were not done in accordance with the agreement, that they were done improperly and after an unreasonable delay. The purpose of pleading is to apprise the court and opposing counsel of the issues to be tried, not to conceal basic issues until the trial is under way and the plaintiff's witnesses have testified. *Biller* v. *Harris,* 147 Conn. 351, 357, 161 A.2d 187. The ruling of the referee in the case at bar was correct.

Under our practice, when a defendant pleads a special defense, the burden of proof on the allegations contained therein is on the defendant. Together with other states, our cases provide for an exception to this rule in suits on insurance policies. "It is our established practice that one suing upon an insurance policy may allege in general terms compliance with all the obligations it imposes upon him, that the defendant insurer must then allege any breach of the terms of the policy upon his part upon which it proposes to rely, but that such an allegation does not shift the burden of proof, the plaintiff being bound to prove performance as regards the breach alleged. *Harty* v. *Eagle Indemnity Co.,* 108 Conn. 563, 565, 143 Atl. 847." *Rochon* v. *Preferred Accident Ins. Co.,* 118 Conn. 190, 195, 171 A. 429. This rule of pleading serves a consideration of convenience, namely, the avoidance of pleading and proving at length the performance of manifold conditions as to which there will probably be no issue. James, Civil Procedure, p. 256 n.11. Such a rule is, in our opinion, advisable and desirable in building contract cases such as the present one. The requirement of the *Dean* case that where the plaintiff pleads performance of a building contract the defendant is required to plead specially any claim of defect, impropriety or unsuitability in the work must be observed. It is manifestly unfair, however, to place the burden of proof on the defendant. The burden of proof remains on the plaintiff to prove performance concerning the matters recited in the special defense. To the extent that the holding of *Dean* v. *Connecticut Tobacco Corporation,* supra, is inconsistent herewith, it is overruled.

The defendants also assign error in the ruling of the referee denying their motion to amend their

answer by filing a special defense. The allowance of an amendment during the course of the trial lies in the sound discretion of the trial court. Practice Book § 132; *Wright* v. *Coe & Anderson, Inc.,* 156 Conn. 145, 155, 239 A.2d 493; *State ex rel. Scala* v. *Airport Commission,* 154 Conn. 168, 178, 224 A.2d 236; *Yavis* v. *Sullivan,* 137 Conn. 253, 263, 76 A.2d 99; Maltbie, Conn. App. Proc. § 63. In exercising its discretion with reference to a motion for leave to amend, a court should ordinarily be guided by its determination of the question whether the greater injustice will be done to the mover by denying him his day in court on the subject matter of the proposed amendment, or to his adversary by granting the motion, with the resultant delay. *State ex rel. Scala* v. *Airport Commission,* supra. This court will not interfere with the decision of a trial court not to permit an amendment unless an abuse of discretion is clearly evident. *Stanley* v. *M. H. Rhodes, Inc.,* 140 Conn. 689, 692, 103 A.2d 143; *Benson* v. *Morey,* 129 Conn. 390, 391, 28 A.2d 843; *Evans* v. *Byrolly Transportation Co.,* 124 Conn. 10, 13, 197 A. 758. In determining whether there has been an abuse of discretion, much depends on the circumstances of each case. Factors that should be considered include unreasonable delay, fairness to the opposing parties and the negligence of the party offering the amendment. *Cummings* v. *General Motors Corporation,* 146 Conn. 443, 449, 151 A.2d 884; *Antonofsky* v. *Goldberg,* 144 Conn. 594, 597, 136 A.2d 338.

In the case at bar the amendment was offered after the second day of trial. The referee considered the fact that at no time prior thereto had the defendants claimed that the plans were defective. The defendants' compliance with the plaintiff's motion for

disclosure indicated three objections to the plaintiff's plans, namely, that they were incomplete, unsuitable and late. The objection that the plans were unsuitable had always been used by the defendants in the sense that the plans involved a more expensive building than had been agreed to by the parties. The referee, under these circumstances, could well believe that the plaintiff had been misled by the defendants and that the filing of the special defense would open the entire case, require a retrial and would be unfair to the plaintiff. We cannot say that the referee abused his discretion in refusing to permit the defendants to file the amendment.

One of the issues at the trial was whether the plaintiff agreed to design an apartment building which would not cost more than $12.50 per square foot. The plaintiff and a witness called by him were permitted, over the objection of the defendants, to testify as to whether it was customary within the architectural profession to enter into such an agreement. The defendants duly excepted and now claim, first, that these rulings on evidence recited in the draft finding should be added to the finding, and second, that such evidence was not admissible. We have considered the matters set forth in the draft finding in order to review the referee's ruling. The defendants objected several times to the testimony on custom and usage on the ground of irrelevancy. "We're only concerned with the contract with this particular case," and such evidence "would have no bearing" on the issue of this case. In their brief, however, the only argument offered to sustain their position is that the evidence was not admissible in the absence of a showing that the defendants knew of the custom or usage. When an objection at the trial is made a ground for appeal, reasons subse-

quently developed which were not before the court at the time of the ruling cannot be considered by this court. *LaVoie* v. *Marshall,* 141 Conn. 681, 687, 109 A.2d 508; *Voegeli* v. *Waterbury Yellow Cab Co.,* 111 Conn. 407, 410, 150 A. 303; *Welbrot* v. *Levenberg,* 98 Conn. 217, 225, 118 A. 911. Thus, we can consider the propriety of the trial court's ruling only on the basis of what was said at the trial. The general objection at the trial did not indicate to the referee the claim now being made on appeal.

There is no error.

In this opinion the other judges concurred.