[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Jonathan Banquer, filed on October 4, 1991, a small claims action against the defendant, New Haven Housing Authority (NHHA), claiming unpaid rent and property damages caused by a tenant covered by a housing assistance payment contract between the plaintiff and the defendant. On November 7, 1991, the defendant moved to transfer the case to the regular docket on the grounds that the defendant had a good defense to the action. That motion was granted November 15, 1991.
The court makes the following findings of fact, as requested by the defendant and not disputed by the plaintiff:
1. The defendant is a quasi-municipal agency, also known as a "PHA" or "Public Housing Authority," which administers low and moderate income housing assistance programs in the City of New Haven, including the Section 8 Housing Program.
2. As a PHA, the defendant operates its housing programs (and particularly the Section 8 Program) using federal monies that it receives from the United States Department of Housing and Urban Development ("HUD"). The Section 8 Program is therefore a creature of federal law and of federal regulation. See24 C.F.R. § 882.101 et. seq. CT Page 8150
3. Under the Section 8 Program, the tenant participant locates suitable housing in the private sector using a Section 8 certificate.
4. Once a landlord and the dwelling unit have been approved for the Section 8 Program, the tenant and the landlord execute a rental agreement for the dwelling unit, which includes a provision for the collection of a security deposit.
5. As part of this approval process for the program, the defendant agrees to pay, on a monthly basis, a portion of the tenant participant's contract rent.
6. The portion of the contract rent that the defendant pays to the landlord participant is based on the income of the Section 8 rental agreement, the said HAP contract and the said addendum remained in full force and effect and without modification tenant participant.
7. The Section 8 tenant participant is responsible for the payment of the balance of the contract rent directly to the landlord participant.
8. The plaintiff was a landlord participant in the Section 8 Program and had been a landlord participant since November 1, 1986.
9. On November 1, 1988, and for a period of time thereafter up to and including June 1990, the plaintiff leased a dwelling unit at 255 Newhall Street in New Heaven, CT to Ms. Shirley Wellons, pursuant to the said Section 8 Program.
10. On the said date, the plaintiff and the said Ms. Wellons executed a rental agreement entitled "Lease Agreement" and "Lease Addendum" for the said unit.
11. Also on the said date of November 1, 1988, pursuant to applicable federal regulations, the plaintiff (as a Section 8 landlord) and the defendant (as the administrator for the Section 8 Program) entered in a contract entitled "Housing Assistance Payment Contract" (henceforth referred to as "HAP contract").
12. Subsequently on November 1, 1989, the said HAP Contract was amended by a "Addendum to the HAP Contract and Addendum to Lease". CT Page 8151
13. During all pertinent time periods stated in the plaintiff's complaint, the terms, conditions and provisions of the said rental agreement, the said HAP contract and the said addendum remained in full force and effect without modification.
14. Section 6(C) of the HAP contract limits the amount of the monetary damages that the defendant (as the administrator of the Section 8 Program) must pay to the plaintiff (as a landlord participant) if the landlord participant incurs damages arising out of the occupancy of the dwelling unit by the tenant participant.
15. Specifically, if the Section 8 tenant participant abandons damages the unit, tails to pay rent, or otherwise breaches the rental agreement with the landlord participant, the landlord participant may seek reimbursement for the incurred monetary damages from the defendant.
16. The defendant's liability for reimbursement, under the said Section 6, is limited to a maximum of two (2) months contract rent less any security deposit collected (or which might have been collected) by the landlord participant. See 24 C.F.R. § 882.112 (d).
17. Under the instant HAP contract for the plaintiff and the defendant, the contract rent was $610.00 per month, and the amount of the security deposit collected (or which could have been collected) by the plaintiff was $243.00.
18. Therefore, under the HAP contract, Section 6, the liability the defendant to the plaintiff for all damages due to Ms. Wellons' occupancy is limited to a maximum of $977.00. That is, twice the contract rent ($610.00 X 2) less the security deposit ($243.00), or $1220.00 less $243.00 for a total, maximum liability of $977.00.
At trial, the plaintiff stipulated that he was now making no claim for reimbursement under Section 7 of the HAP contract. He testified that his sole claim is for reimbursement under Section 6 of the HAP contract for unpaid rent and damages, which would be at most $977.00. Both parties stipulated that the defendant already pay the plaintiff their portion of the rent for the apartment for June and July under the HAP contract but not the tenant's portion of July rent, or $259.00, which is claimed in CT Page 8152 this action under Section 6 of the HAP contract.
The major issues at trial were who was responsible damage to the premises and whether or not the plaintiff met the notification requirements for reimbursement under Section 6(E). Section 6(E) reads as follows:
 (E). To make a claim under this section, the Owner shall immediately notify the PHA when the Family has moved from the Contract unit. The Owner shall submit to the PHA, as soon as possible, written documentation supporting the claim for reimbursement, including evidence of actual costs of required repairs and evidence of billing to and nonpayment by the Family. The PHA has the right to inspect the unit with the Owner to determine the extent of any damage.
The court heard testimony from only Monica Blazic, Section 8 coordinator, and from the plaintiff. The court did not have the benefit of the tenant's testimony because she died August 1, 1992, and no offer was made of her testimony during the administrative hearing held under federal housing regulations.
The plaintiff testified that he had done a "total gut" rehab of the premises immediately prior to the time the tenant occupied the second floor apartment. He believes she moved from the premises sometime in June of 1990 and returned the keys about a month later. Ms. Blazic testified that she believed the tenant left in May and returned the keys July 11, 1990, but later testified, after she reviewed her file, that the tenant moved out in June. She also testified there were letters in the file, one dated May 14, 1990, from the tenant to the plaintiff saying she was moving.
The plaintiff saw the premises both before and after she moved. He testified that the apartment needed a lot of work when she moved out. There were holes in the wall, windows were broken, floors were gouged, baseboards were broken, and kitchen tiles were ripped. He testified to heavy abuse. He testified that after the tenant vacated, he followed his standard procedure, which is to board up the doors to make it difficult for anyone to get in to the premises. He testified that he had photographs taken of the premises and given to Regina in Mr. Winterbottom's office and has never seen them again. Mr. CT Page 8153 Winterbottom is in-house counsel for the PHA. Ms. Blazic did not recall seeing photographs.
The plaintiff testified that he made calls to the housing authority to request an inspection and reimbursement after he became aware of her vacancy. He requested an inspection for the damages. A letter from Ms. Blazic to the tenant dated August 23, 1990, confirms that the plaintiff had made a request for the tenant's vacancy payment for the months of June and July, 1990, not paid. Checks paid to the plaintiff in September by the defendant for the defendant's portion of the rent on the tenant's behalf also confirm communication between the parties. He eventually made a written request for payment for damages of over $3000.00 on October 4, 1990, from the tenant.
An inspection was conducted on November 8, 1990, with a stated date of request from the landlord of October 24, 1990. The plaintiff testified that the report of the housing authority inspector documenting the damages was accurate but that he disputes the dollar amounts that the inspector listed were needed to repair the damages. The housing authority inspector found damages in the amount of $1565.00. The plaintiff claimed damages in excess of that, over $3000.00. Ms. Blazic testified that it would be the practice of the authority to accept the inspector's report as valid. Therefore, both parties do agree that at least $1565.00 in damages was caused to the premises and that only $977.00 is allowable under the HAP contract.
The plaintiff says those damages were caused by the tenant and the defendant says that the plaintiff's unreasonable delay in reporting the damages in late October to the defendant under Section 6(E) undercuts his claim that the tenant was the source of the damage. Ms. Blazic testified that it is standard practice the defendant to send out inspectors if the landlord requests.
Based on the evidence presented and credibility of the witnesses, the court enters judgment for the plaintiff in the amount of $977.00, because the court finds that the tenant did cause the damages and the plaintiff did notify the defendant when the family moved out, as is evidenced by the plaintiff's testimony and by Ms. Blazic's letter to the tenant on August 23, 1990.
Even though Ms. Blazic testified that it is the policy of the defendant to send out an inspector when the landlord CT Page 8154 requests, the court finds nothing in the HAP contract or the other documents admitted into evidence that places the responsibility on the landlord "Owner" to specifically request the inspection before the PHA is allowed to inspect. The plaintiff testified that he made a request for inspection when he became aware of her vacancy in July and the defendant's position is that he did not make the request until October 24, 1990. As noted above, "to make a claim under this section", for damages and unpaid tenant rent, the landlord "Owner" is required to immediately notify the defendant when the family moves out. Once that notification occurs, then under Section 6(E), the defendant has the right to inspect the unit with the Owner to determine the extent of any damage. Under the specific language of Section 6(E), the defendant is not required to wait for any specific request by the landlord/Owner to inspect; the defendant has the right to inspect when there is notification of the vacancy.
During closing arguments, the defendant raised an issue that the plaintiff is required under Section 6(E) to submit written documentation evidencing the actual cost of repairs and billing to and nonpayment by the family. The plaintiff then strenuously objected that this requirement was not pleaded as a special defense to the plaintiff's claim for reimbursement. When the documentation issue was raised by the defendant, it was not clear to the court whether it was raised to destroy the defendant's liability or attack the plaintiff's credibility. The plaintiff assumed the former.
The purpose of pleading is to apprise the court and opposing counsel of the issues to be tried. Dubose v. Carabetta,161 Conn. 254, 261 (1971). The purpose of a special defense is to plead facts which are consistent with the allegations of a complaint but show, notwithstanding, that the plaintiff has no cause of action. Commissioner of Environmental Protection v. National Can Corporation, 1 Conn. L. Rptr. 272, 5 CSCR 173 (1990). 1 Stephenson, op. cit., p. 521, 127(c), explains the plea with an apt illustration: D is liable to P if a, b, and c are true unless d is also true. If d contradicts a, b, or c, then evidence of d may be admitted under a denial. If, however, the existence of d does not negate the existence of a, b, or c, but independently destroys liability, then evidence of d may be admitted only under a special defense. The distinction is significant since pleading is more than a mere procedural formality. Generally, it allocates the burden of proof on a particular issue. DuBose v. Carabetta, supra, 262; 1 Stephenson, CT Page 8155 op, cit., p. 523, 127(e); James, op. cit. 4.10. Pawlinski v. Allstate Ins. Co., 165 Conn. 1, 6, 7 (1973). If a defense must be pleaded as a special defense, then the failure to do so means that no evidence on the subject is admissible. DuBose v. Carabetta, 161 Conn. 254 (1971).
The plaintiff specifically objected to the defendant's raising of that issue for the first time in closing argument, so he did not waive in any fashion the failure of the defendant to file a special defense to assert that since the plaintiff did not comply with that provision regarding documentation, the defendant is not liable. Therefore, if the issue was raised in closing argument to destroy the defendant's liability, then the court agrees with the plaintiff that it should have been raised by way special defense. However, if the issue was raised to attack Mr. Banquer's credibility, then the court could consider it accordingly.
Although the plaintiff clearly is required to provide a more particularized itemization supporting the claim damages and other amounts, he did send a billing to the tenant on October 4, 1990, as required under Section 6. This billing came into evidence without objection. Notwithstanding all of this, the specific language of the HAP contract does not condition an inspection of the premise by the defendant on the receipt by the defendant of that written documentation from the landlord/Owner. Therefore, whether or not the defendant was required to specially plead the plaintiff's noncompliance with this provision of the lease is not the pivotal issue to the court. The pivotal issue is the plaintiff's notification of the vacancy and testimony of damages and unpaid rent and the subsequent opportunity of the defendant to inspect and the inspector's testimony of damages. Written documentation of the plaintiff's actual cost of required repairs near the time of the vacancy would clearly have added to the plaintiff's case and credibility had it been provided. The plaintiff has met his burden on the tenant's July unpaid rent claim and property damages and is awarded $977.00 in damages.
Plaintiffs have requested attorney's fees pursuant to General Statutes 52-251a, which states "[w]henever the plaintiff prevails in a small claims matter which was transferred to the regular docket in the superior court on the motion of the defendant, the court may allow to the plaintiff his costs, together with reasonable attorney's fees to be taxed by the court." This case, as originally framed, could have been CT Page 8156 litigated in the small claims forum, in an expeditious and less expensive fashion for both parties.
The plaintiff's counsel has submitted a statement indicating his fees were $795.00. Upon review and without any objection from opposing counsel, which was to have been filed on or before June 8, 1993, the court finds that reasonable attorney's fees of $795.00 should be awarded.
The plaintiff also requests the 10% statutory interest under General Statutes 37-3a from December of 1990 until the judgment date and thereafter.
C.G.S. 37-3a, as amended, allows interest of ten (10) per cent a year as damages for the detention of money. This prejudgment interest is assessed from the date the money became due and payable. The determination of whether such interest will be assessed in contract actions, which raises a question of fact, hinges on whether the detention of money was wrongful under the circumstances. See Associated Catalog Merchandisers, Inc. v. Chagnon, 210 Conn. 734, 748, 750 (1989); Ottaviana v. Pechi,16 Conn. App. 705, 708 (1988). This determination lies within the trial court's discretion. Associated Catalog Merchandisers, Inc., 210 Conn. at 749.
The court declines to award this interest before judgment finding that under the circumstances the detention of the money was not wrongful. The court will award interest, however, from judgment day and forward.
In conclusion, judgment to enter for the plaintiff in the amount of $977.00 plus $795.00 attorney's fees and costs of this action and 10% statutory interest.
So ordered.
Clarine Nardi Riddle, Judge